GORSUCH HOMES, INC., d.b.a. Villa Park, Ltd., Appellee,

v.

WOOTEN, Appellant.

[Cite as *Gorsuch Homes, Inc. v. Wooten* (1992), 73 Ohio App.3d 426.]

Court of Appeals of Ohio,
Clark County.

No. CA 2856.

Decided May 11, 1992.

*Bonnie A. Conrad,* for appellee.

*Frank P. Catanzariti,* for appellant.

FAIN, Presiding Judge.

Defendant-appellant, Linda Wooten, appeals from an eviction order rendered by the Clark County Municipal Court. Plaintiff-appellee, Gorsuch Homes, Inc., d.b.a. Villa Park, Ltd., is the owner of the apartment complex, Villa Park, where Wooten is a tenant under Section 8 federally subsidized

housing. Wooten argues that: (1) she must be afforded a hearing before an impartial tribunal with respect to a disputed claim before her failure to pay the claim may support an action to evict her; (2) the evidence established that Gorsuch had failed to afford Wooten, as required by the lease and federal regulations, a conference to discuss the proposed termination of her tenancy before seeking an eviction order; and (3) the trial court erred when it failed to consider whether to grant equitable relief to prevent a forfeiture of her leasehold interest. We agree with each of Wooten's arguments. Therefore, the judgment of the trial court is reversed, and this court will enter judgment in Wooten's favor, pursuant to App.R. 12(B).

## I

Linda Wooten leased an apartment at the Villa Park apartment complex from Gorsuch on February 26, 1990, for a one-year term ending February 25, 1991, and continuing for successive one-month terms unless terminated for good cause as permitted by paragraph 23 of the lease agreement. Wooten was to pay no rent, because her income was so low that she qualified for a one-hundred percent subsidy. The United States Department of Housing and Urban Development paid $474 per month to Villa Park, and Gorsuch Homes paid an $85 utility voucher to Villa Park to make up the balance of the $559 fair market value of the apartment. Wooten also received a $12 check each month from Gorsuch Homes as part of a utility rebate. Living with Wooten in the apartment were her daughter and teen-aged son, Tim Wilson.

In November 1990, Tim Wilson participated, at least, in painting graffiti on brick walls surrounding a dumpster and on the side of a building.[1] Paragraph 23 of the lease agreement provides that a material noncompliance with the lease justifying termination of the tenancy includes "the failure to *reimburse* the Landlord within 30 days for *repairs made* under paragraph 11 of this Agreement [for damage caused by the Tenant, her family, or visitors] * * *." (Emphasis added.) Donna Rice, the local resident manager for the Villa Park complex, immediately demanded that Linda Wooten pay the entire amount of the repair estimate, before the work was done and before the actual cost was finally determined. Wooten requested a breakdown of the bill and disputed

---

1. Donna Rice, the resident manager for Villa Park, testified that Tim Wilson admitted to her that he painted the graffiti; Wooten testified that Wilson was only one of three boys who were involved, and that Wilson painted only on one wall, not on all walls of the dumpster, and the sides of buildings. Michelle Lee, another manager for Villa Park, testified that Timothy admitted painting the graffiti on the side of one building. Barton Hause testified that the names used in the graffiti referred to Tim Wilson and another teen-aged resident of the complex.

the amount, believing that she should not have to pay the entire amount because her son did only part of the damage.

Wooten testified that she offered to make monthly payments but that this offer was rejected. Rice testified that she gave Wooten a bill for the repair cost on January 24, 1991. What she gave her was apparently a building repair estimate sheet dated December 3, 1990, from Kapp Construction, showing an estimated cost of $907 for removing the graffiti. A proposal from Kapp, based on the estimate, was dated February 12, 1991, and was accepted by Donna Rice for Villa Park Limited on February 18, 1991. The building repair estimate provided that the amount quoted was an estimate and that if more work needed to be done it would be done "at the same hourly rates." The work was completed in March, and the billing statement to Villa Park was dated March 25, 1991, in the amount of $907. Rice testified at trial in July 1991 that Villa Park had still not paid the $907 to Kapp Construction.

On March 26, 1991, apparently the day Gorsuch received the bill from Kapp, Rice and Wooten met and discussed the Clark County Juvenile Restitution Program through which Tim Wilson was scheduled to make restitution to the landlord. On March 27, 1991, Rice wrote to Wooten confirming the meeting, indicated that Wooten should contact the restitution program, and concluded that "a response to this matter needs to be received at this office within ten (10) days. At the end of this period legal action will proceed, if no response is given." Wooten called Rice and said that she wanted to meet with Tony Fout, the regional property manager for Gorsuch, in an attempt to resolve the dispute over the amount of the bill. Rice wrote to Wooten explaining that Fout would not schedule a meeting with her until she wrote him and stated the purpose of the meeting. Rice gave Wooten his address, and on April 4, Wooten wrote to Fout requesting a meeting to discuss the damages.

On April 11, Rice served Wooten with a ten-day notice to leave premises that was based on Wooten's refusal to pay the damages that had been demanded on March 26. The notice stated the grounds for the termination and advised her as follows:

"Material Non–Compliance of Lease

"Non–Payment of Damages Para: 11–A Payment due within 30 days. Did not comply with meeting March 26, 1991.

" * * *

"You are hereby advised that you have 10 days within which to discuss this proposed termination of tenancy with the Landlord. The 10 day period will begin on the earlier of the date this notice was hand-delivered to your unit or the day after the date the notice was mailed. *If you request the meeting, the*

*Landlord agrees to discuss the termination with you.* The meeting can be arranged by calling The Resident Manager or Gorsuch Homes, Inc. at 1–614–653–0079. You are also advised that you have a right to defend this eviction action in court. [Emphasis added.]

> "Agent for the Owner Villa Park Ltd/Gorsuch
> GORSUCH HOMES Management, Landlord
> P.O. Box 190 By: Donna Rice
> Lancaster, Ohio 43130 Resident Manager"

---

Wooten called Rice and again told her that she wanted to have a meeting with Fout. Fout refused to meet with her. No meeting was held regarding the payment for the damages, although one or two meetings were set up in April regarding complaints by other tenants about Wooten's children. On May 21, Rice served Wooten with another ten-day notice, Wooten again requested a meeting, but no meeting was held. On June 3, Rice served Wooten with a three-day notice to vacate, based on Wooten's failure to comply with the ten-day notice. Wooten again offered to pay in installments, but Rice refused.

The referee did not consider any evidence regarding certain complaints by other tenants because Wooten had requested a meeting to discuss these complaints subsequent to the May 21 ten-day notice, but had not been given one. The referee concluded that because Wooten had not been afforded an opportunity to meet to discuss the complaints, as required by the lease, those complaints were not properly before him.

The referee concluded that Wooten had materially breached the lease by failing to comply with paragraph 11(a), and recommended that a writ of restitution issue. The trial court entered a judgment of restitution. Wooten appeals from that judgment.

## II

Wooten's first assignment of error is as follows:

"Due process and fundamental fairness require defendant-appellant be given a hearing before an impartial tribunal over a disputed debt before failure to pay a disputed debt constitutes good cause for eviction."

Wooten argues that, as a tenant in federally subsidized housing, she is entitled to have her landlord's claim for damages adjudicated at a hearing before a neutral person before her failure to pay the amount claimed may provide the basis for her eviction. In response, Gorsuch argues that the

requirements of due process and fundamental fairness were satisfied by the state court eviction procedure.

■■■■ The due process requirements of the Fourteenth Amendment apply to private landlords who provide Section 8 federally subsidized housing for low-income tenants. The government action requirement for the application of the requirement of constitutional due process is satisfied by the substantial government involvement in financing new construction and rehabilitated housing, the rental assistance payments made directly to the owner by HUD on behalf of the tenant, the regulations imposed upon the owner by HUD, and the public function served by providing the housing. The tenant has a constitutionally protected property interest in continued occupancy of federally subsidized housing. A landlord cannot evict a tenant in Section 8 housing absent "good cause"; absent good cause for eviction, a tenant may remain in the housing for life, and the right to do so is a constitutionally protected property interest. See, *e.g., CMHA v. Harris* (June 15, 1983), Hamilton App. No. C–820540, unreported, 1983 WL 8893; *Joy v. Daniel* (C.A.4, 1973), 479 F.2d 1236; *Lopez v. Henry Phipps Plaza South, Inc.* (C.A.2, 1974), 498 F.2d 937; *Escalera v. New York City Housing Authority* (C.A.2, 1970), 425 F.2d 853; *Geneva Towers Tenants Organization v. Federated Mortgage Investors* (C.A.9, 1974), 504 F.2d 483; *Marsh v. Alabama* (1946), 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265.

Gorsuch does not seriously dispute that the requirements of constitutional due process apply, but instead attempts to distinguish the cases relied on by Wooten, and argues that the state court eviction action provided Wooten with adequate due process in this case.

■■■■ The procedure for charging a tenant, under paragraph 11(a) of the lease, with the cost of repairing damage caused by the tenant must satisfy the requirements of due process. This is so because nonpayment of that amount is defined as a material breach of the lease constituting a ground for termination of the tenancy under paragraph 23 of the lease. Because termination of the lease deprives the tenant of a constitutionally protected property right in the continued tenancy, any circumstance that triggers the involuntary termination of the lease must satisfy constitutional due process.

■■■■ The minimum safeguards required for due process depend on the government function involved and the substance of the private interest that is affected by the governmental action. *Goldberg v. Kelly* (1970), 397 U.S. 254, 263, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287, 296. At a minimum, due process requires that a tenant be afforded an opportunity to be heard before a neutral adjudicator in support of her position that she is not liable for the damages or

that the amount is incorrect or inequitable. Where, as here, the resolution of the dispute depends upon disputed issues of fact, due process requires an opportunity to confront and to cross-examine adverse witnesses. *Goldberg, supra,* 397 U.S. at 269, 90 S.Ct. at 1021, 25 L.Ed.2d at 299.

 Furthermore, a disputed claim for damages may not become a charge against a tenant's property right in her federally subsidized tenancy until the amount of the damages has been determined. In the case before us, Gorsuch demanded payment from Wooten approximately two months before the cost of repair was actually determined; the final amount could have been less than or more than the estimate. Charging Wooten with the estimated cost and requiring payment more than a month before the work was done conforms neither with normal commercial practices nor with the requirements of constitutional due process. The failure to pay an amount in dispute before the dispute is adjudicated cannot be deemed to be a material breach of a lease sufficient to forfeit the tenant's continuing right of tenancy.

Wooten's first assignment of error is sustained.

### III

 Wooten's second assignment of error is as follows:

"The trial court erred in failing to dismiss the eviction where the evidence showed that appellee failed to give appellant a conference to discuss the termination prior to filing its eviction action."

Wooten argues that, because Gorsuch did not fulfill its obligation to meet with her to discuss the proposed termination of her tenancy after the notice to leave was served, the complaint should be dismissed.

Gorsuch Homes is obligated by federal regulations and by its lease to meet with Wooten to discuss a proposed termination prior to filing an eviction action, if she requests a meeting within ten days of receiving the notice. Section 880.607(c), Title 24, C.F.R.; HUD Lease Agreement paragraph 23(c). Gorsuch admitted that Wooten made such a request, both: (1) before she received the notice to leave but after she received the bill for the work on March 26, when she wrote to Tony Fout of Gorsuch Homes on April 4; and (2) after she received the notice, when she told Rice that she wanted to discuss the damages and the proposed termination. Although the referee found that a meeting was arranged that Wooten failed to attend, it is clear from the record that this meeting was scheduled to discuss certain complaints that had been made by other tenants, not to discuss the proposed termination of Wooten's tenancy for failure to pay the $907 bill for the graffiti.

The record shows that Rice met with Wooten on March 26, 1991, and presented her with a statement from Kapp Construction dated March 25, 1991, for work done through March 25. It was not until March 25 that the actual amount of the repair bill was known. Wooten, by the terms of the lease agreement, had at least thirty days from March 26, when she was given the bill, to make arrangements to reimburse the landlord. (We are, for these purposes, ignoring the fact that Gorsuch had not yet paid the bill, and had not even paid it by the time of trial, so that it was not in a position to be "reimbursed.") These facts notwithstanding, Gorsuch proceeded to give notice to leave on April 11, before a material noncompliance had occurred according to the lease terms.[2]

Although Rice admitted receiving a request from Wooten to discuss the proposed termination of tenancy after Wooten was served with the notice to leave, there is no evidence that Wooten was allowed to meet with the owner, or with anyone else, for that matter, to discuss the alleged damages. While Wooten did meet with Rice, the resident manager for Villa Park, to discuss other matters, there is no evidence that they discussed the damages allegedly caused by Wooten.

One of the purposes of federally subsidized housing is to assure that every American can afford a decent home. The purpose of the requirement of the federal regulations and the lease agreement that a tenant must be afforded an opportunity to meet with the landlord to discuss a proposed termination of tenancy is to attempt to resolve the controversy in a mutually satisfactory manner, that will, if possible, avoid the tenant's loss of subsidized housing while protecting the rights of the landlord. Neither the underlying purpose nor the formalities of the requirement were satisfied in this case, where it is clear from the record that after Wooten received notice of the proposed termination of her tenancy because of her failure to pay the $907 graffiti bill, she was not given her requested opportunity to meet with a representative of the landlord to discuss that subject.

The referee erred in finding that there had been meetings that satisfied the requirement of the federal regulations and the lease agreement. Because it is clear from the record that the trial court's finding should have been to the

---

**2.** Demanding payment before the work is done or the cost of repairs is known is not contemplated by the federal regulations or by the lease. The lease provides that the landlord is to be *reimbursed* for *repairs made,* not that the tenant is obligated to make the repairs in the first instance. The landlord's presentation to Wooten on January 24 with an estimate of work to be done in the future did not start the thirty-day period referred to in paragraph 11(a) of the lease.

contrary, judgment should have been rendered in Wooten's favor on the eviction issue.

Wooten's second assignment of error is sustained.

## IV

Wooten's third assignment of error is as follows:

"The trial court erred when it failed to grant equitable relief to prevent a forfeiture of defendant-appellant's leasehold interest."

Wooten argues that because she has a valuable property interest in her continued tenancy in federally subsidized housing the trial court should have weighed the equities of the parties and should have fashioned a remedy that would have avoided, if possible, the forfeiture of her leasehold interest. She argues that she should not lose her tenancy solely because she disputed the amount of the damages that she owed.

Among other affirmative defenses pled by Wooten were the following:

"13. Equity abhors a forfeiture of a lease.

"14. Equity will not allow the forfeiture of a lease where the lease violation is minor, where strict compliance with the lease is not uniformly required by the lessor, where adequate monetary compensation can be provided the lessor in lieu of forfeiture, and where forfeiture would cause extreme hardship for the lessee."

Gorsuch argues that the equities were presented to the trial court, the trial court weighed them, and the trial court found the equities in favor of Gorsuch. However, the record does not reflect that either the referee or the trial court considered Wooten's equitable argument. The referee's findings did not address any equitable issues, and his conclusion was simply that "there has been a material breach of the lease agreement by the defendant for failure to comply with paragraph 11(a). The Plaintiff has the right to terminate the lease agreement and take present possession of the property as a result of this breach." His recommendation was that a writ of restitution issue forthwith. The referee's report and recommendation was adopted without comment by the trial court. There is no indication in either the report and recommendation, or the decision of the trial court adopting the report and recommendation, that Wooten's equitable argument was considered.

Ohio courts have the power, and often exercise it, to relieve a tenant from the consequences of forfeiture of a leasehold interest. See, *e.g., Tabor v. Bellman* (1919), 13 Ohio App. 382, 32 Ohio C.C. (N.S.) 101; *Whitmore v. Meenach* (App.1940), 33 Ohio Law Abs. 95, 33 N.E.2d 408; *Peppe v. Knoepp* (1956), 103 Ohio App. 223, 74 Ohio Law Abs. 79, 3 O.O.2d 281, 140 N.E.2d 26;

*Southern Hotel Co. v. Miscott, Inc.* (1975), 44 Ohio App.2d 217, 73 O.O.2d 235, 337 N.E.2d 660; *CMHA v. Harris, supra; Heritage Hills v. Nusser* (July 3, 1986), Ross App. No. 1183, unreported, 1986 WL 7882. Generally, courts, in balancing the equities, will relieve a tenant from the harsh consequences of a forfeiture where the payment of money damages will adequately compensate the landlord. That is true even where the forfeiture is requested because of damages done by a tenant's children. *CMHA v. Harris, supra.*

In the case before us, Wooten has a substantial equitable interest in maintaining her fully subsidized housing, which had a market value of $559 per month plus a utility rebate. The fact that her subsidy was one hundred percent is an indication of her low income status and demonstrates that it would be unreasonable to expect her to make a $907 payment in full within thirty days.

When a party raises an equitable defense, it is the responsibility of the court to weigh the equitable considerations before imposing a forfeiture. Among the factors to be considered are Wooten's income; her presumed inability to pay $907 in one month, which can be inferred from her one hundred percent rent subsidy and utility rebate; the fact that she personally did not cause the damage; the removal of her son from the apartment complex; the fact that money damages will compensate the landlord; and the hardship to Wooten if she is evicted, including Wooten's probable difficulty in obtaining other subsidized housing.

Because it appears from the record that the trial court failed to consider the equitable defense pled by Wooten in her answer, Wooten's third assignment of error is sustained.

V

All of Wooten's assignments of error having been sustained, the judgment of the trial court is reversed. Because this court concludes that Wooten is entitled, as a matter of law, to judgment in her favor on the issue of eviction, judgment is entered in Wooten's favor on the issue of her eviction from the premises, pursuant to App.R. 12(B), and this cause is remanded for any further proceedings that may be necessary or appropriate upon the issues made up by the pleadings, consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

WILSON and GRADY, JJ., concur.