[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-appellant Melody Manning appeals from an order of eviction pursuant to an action for forcible entry and detainer filed in the Fairborn Municipal Court by plaintiff-appellee Greene Metropolitan Housing Authority. Manning contends that she was not served with adequate statutory notice prior to the initiation of the eviction complaint. She also contends that the trial court's finding that she breached the terms of her lease agreement is against the manifest weight of the evidence. She further contends that the trial court erred by failing to afford her equitable relief. Finally, she claims that the trial court erred in failing to find that the eviction action was the result of discriminatory conduct by the Housing Authority.
We conclude that the statutory notice to vacate was inadequate in regard to both its service and content. We also conclude that while the findings of the trial court in regard to Manning's breach of the lease agreement are supported by the evidence, the trial court did err by failing to consider or to grant equitable relief. Finally, we decline to address the issue of discrimination, because that matter was not properly raised in the trial court.
The judgment of the trial court is Reversed and Vacated.
 I
The appellee has failed to file an appellate brief. Therefore, the facts relevant to this appeal are taken from the appellant's brief, pursuant to App. R. 18(C), which provides, in pertinent part:
 * * * If an appellee fails to file his brief within the time provided by this rule, or within the time as extended, * * * in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct * * *.
Defendant-appellant Melody Manning has rented and lived in a subsidized home owned by plaintiff-appellee Greene Metropolitan Housing Authority (hereinafter "GMHA"), since 1994. Manning is considered blind as a result of nerve damage to her eyes incurred during brain surgery.
Pursuant to the terms of the lease agreement executed by GMHA and Manning, she is required to re-certify her status as an eligible tenant on a yearly basis. On August 29, 1997, GMHA sent a letter to Manning indicating that she needed to complete a re-certification packet; a packet was enclosed with the letter.[1] On September 3 and 24, 1997, reminders were mailed to Manning regarding the re-certification packets. On September 30, 1997, another reminder was mailed to Manning indicating that she needed to turn in her re-certification packet by October 7, 1997. On October 15, 1997, another letter was mailed to Manning indicating that she needed to return her re-certification packet by October 22, 1997.
Manning called GMHA on November 25, 1997. She left a voice mail message indicating that she needed to talk to a manager about her garage door. She called back the next day, and was informed that her re-certification packet was due by 4:00 p.m. on December 1, 1997. She was told that her assistance would be terminated if the packet was not submitted. According to Manning, she requested her housing manager to come to her home to help her fill out the packet. The request was denied. On December 1, 1997, Manning appeared at the offices of GMHA with a packet. However, the packet she brought with her was a packet for another agency instead of the GMHA re-certification packet. Manning returned on December 3, 1997 with the proper packet filled out for re-certification.[2]
On December 9, 1997, Manning was served, by personal service, with a thirty-day notice to leave the premises. The notice was based upon Manning's failure to comply with the lease agreement provisions regarding re-certification of eligibility. Manning did not vacate, and on February 4, 1998, a three-day notice was posted on the front door of her home. The notice requested that she vacate the premises no later than February 9, 1998.
On February 17, 1998, GMHA filed a complaint in forcible entry and detainer. Manning was served personally with the complaint and hearing notice. A hearing was held on May 13, 1998. At the conclusion of the hearing the magistrate entered a decision in favor of GMHA. The magistrate's decision was based on the finding that the notices of eviction were properly served and that Manning breached her lease by failing to comply with the re-certification requirements. The judgment entry was adopted and signed by the trial court on the same day the decision was entered.
Manning filed objections to the magistrate's decision on May 26, 1998. She also filed a request for stay of execution of judgment. The stay was granted on June 1, 1998, pending a decision on the objections. Manning appeals from the order evicting her. After Manning perfected her appeal, GMHA filed a Notice of Dismissal, pursuant to Civ.R. 41(A)(1), in the trial court.[3]
 II
Manning's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED IN FINDING THAT THE NOTICE TO VACATE WAS SUFFICIENT UNDER THE LAW.
Manning contends that the trial court erred by finding that the three-day notice to vacate served upon her by GMHA was legally sufficient.
Pursuant to R.C. 1923.04, a "party desiring to commence an action under this chapter [forcible entry and detainer] shall notify the adverse party to leave the premises, * * * three or more days before beginning the action, by certified mail, return receipt requested, or by handing a written copy of the notice to the defendant in person, or by leaving it at his usual place of abode or at the premises from which the defendant is sought to be evicted." The statute requires that every notice given under this section, by a landlord attempting to recover leased premises, shall contain the following language printed or written in a "conspicuous manner":
 You are being asked to leave the premises. If you do not leave, an eviction action may be initiated against you. If you are in doubt regarding your legal rights and obligations as a tenant, it is recommended that you seek legal assistance.
"[C]ompliance with R.C. 1923.04 is a condition precedent to the bringing of an action in forcible entry and detainer."Schlenk v. Cornette (June 21, 1991), Montgomery App. No. 12416, unreported. In an eviction proceeding the trial court must, as a preliminary matter, find that the landlord served the required statutory three-day notice upon the tenant prior to proceeding to the hearing on the merits. Admr. of Veterans Affairs v. Jackson
(1987), 41 Ohio App.3d 274, 278. Proper service of the three-day notice is a condition precedent to the commencement of an action in forcible entry and detainer without which the trial court errs in proceeding to the merits of the case. Associated Estates Corp.v. Bartell (1985), 24 Ohio App.3d 6.
We note that the phrase "conspicuous manner" is not defined within the statute. However, in determining the meaning of the phrase, the Ninth District Court of Appeals relied upon the following definition of "conspicuous" as set forth in the Uniform Commercial Code: "[a] term or clause * * * written [so] that a reasonable person against whom it is to operate ought to have noticed it." Admr. of Veterans Affairs v. Jackson (1987),41 Ohio App.3d 274, 276, citing R.C. 1301.01(J). We find the use of this definition reasonable in light of the clear purpose of R.C. 1923.04 — to apprise the tenant that they are being asked to leave, and that an eviction action may ensue if they fail to leave.
Technically, it would appear that GMHA complied with the statutory requirements regarding the notice. However, we conclude that under the peculiar circumstances of this case the notice, and the service thereof, were insufficient. What would suffice as a "conspicuous manner" for sighted persons is not adequate to provide notice to an individual known to be sight-impaired. Furthermore, the terms of the lease agreement provide that: "[i]f Tenant has notified GMHA that Tenant is visually impaired, all notices shall be in an accessible format." The phrase "accessible format" is not defined within the lease; however, the lease clearly evidences an intent to accommodate those tenants who are visually impaired.
In this case, there is no dispute that Manning is visually impaired or that GMHA had knowledge of that impairment. Despite these facts, the notice provided was not in a format that could be considered accessible to a blind person; GMHA did not provide a reader, Brailled materials or even audio recordings. Furthermore, there is no evidence that a representative of GMHA, or anyone for that matter, made any effort to apprise Manning of the content of the notice by way of even a simple telephone call. Instead, the notice consisted of a type-written and hand-written document posted on Manning's front door.
A landlord, knowing that a tenant is blind, cannot claim that the tenant has been properly served with statutory notice when she cannot even see the notice posted on her door. Clearly, the notice was not sufficient because it failed to apprise Manning that she was being asked to leave the premises or that an eviction action could be filed. Accordingly, we find that the evidence does not support a finding that GMHA properly served Manning with notice as required by both the lease and R.C. 1923.04. Therefore, the trial court erred by proceeding with the forcible detainer and eviction hearing.
Manning's First Assignment of Error is sustained.
 III
Manning's Second Assignment of Error is as follows:
 THE MAGISTRATE ERRED BY FINDING FROM THE FACTS THAT NO DISCRIMINATION WAS PRESENT IN THE EVICTION.
Manning contends that the trial court incorrectly determined that she was the object of discrimination in the eviction proceeding. We need not address this issue. First, the trial court did not make such a finding. In fact, the judgment is devoid of any reference to discriminatory conduct. Second, our review of Manning's answer to the complaint reveals that she did not raise any allegation of discrimination either by way of defense or counter-claim. Therefore, since the issue was not before the trial court, we decline to address it on review.
Accordingly, the Second Assignment of Error is overruled.
 IV
Manning's Third and Fourth Assignments of Error provide:
 THE TRIAL COURT ERRED BY NOT FINDING FROM THE FACTS THAT APPELLANT WAS ENTITLED TO RELIEF UNDER AN EQUITY DEFENSE.
 THE TRIAL COURT ERRED BY RULING AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Manning contends that the trial court erred by finding that she had breached the provisions of the lease agreement. She also contends that the trial court erred by failing to afford her relief under an equitable defense theory.
We begin with the claim that the trial court's judgment was not supported by the evidence. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v.Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. In considering whether the judgment of the trial court is against the manifest weight of the evidence, it is important that the court of appeals be guided by a presumption that the findings of the trier-of-fact are correct. Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 79-80.
In determining whether Manning breached the lease agreement it is important to note that GMHA is a federally subsidized housing project subject to federal laws and regulations; therefore, the termination of Manning's lease agreement is governed by 24 C.F.R. 247.3. This regulation provides in pertinent part that a "landlord may not terminate any tenancy in a subsidized project except upon the following grounds: (1) [m]aterial noncompliance with the rental agreement. * * *" "Material noncompliance" includes the tenant's failure "to supply on time all required information on the income and composition, or eligibility factors, of the tenant household as required by 24 C.F.R. part 5." According to the regulations, a housing authority may require any documents determined to be necessary in determining eligibility. 24 C.F.R. 5.617(b)(2).
The lease agreement regarding re-certification provides, in pertinent part, as follows:
 Annual Re-examinations: Once each year as requested by GMHA, Tenant shall furnish accurate, current and complete information to GMHA as to family income, employment, composition and assets, for use by GMHA in determining whether the rent should be changed, whether the size of the Premises is still appropriate for the Tenant's family and needs, and whether Tenant is still eligible for low rent housing. This determination shall be made in accordance with the Admissions and Occupancy Policy.
* * *
 At all times, Tenant shall fully cooperate with GMHA in reporting any change in circumstances and income and in complying with all conditions regarding rent re-examinations, adjustments, and verification as required or stated herein above. Tenant's failure to furnish information or report any changes to GMHA on a timely basis, at GMHA's discretion may result in GMHA making determinations based upon information GMHA has acquired, in retroactive rent charges, or in an eviction.
In this case, it appears that Manning attempted to cooperate, in a timely manner, with GMHA in complying with the re-certification requirement. When she was finally made aware that GMHA had made its yearly request for re-certification information, she made arrangements to get to the GMHA offices in order to submit her information. In fact, the record indicates that on the December 1 deadline, she provided all of the materials needed for verification of her income status. However, she did not have the signed packet with her. Therefore, we must conclude that since Manning did not supply, on time, all information on the composition and eligibility factors of the tenant household as determined to be necessary by GMHA, she did breach the terms of the lease agreement.
However, courts have the ability to "relieve a tenant from consequences of forfeiture of a leasehold interest." GorsuchHomes, Inc. v. Wooten (1992), 73 Ohio App.3d 426, 435. As noted in Gorsuch, "[w]hen a party raises an equitable defense, it is the responsibility of the court to weigh the equitable considerations before imposing a forfeiture." Id., at 436.
In looking at the issue of equitable relief, as raised by Manning, we note that, pursuant to 24 C.F.R. 8.6, a recipient of federal funds "shall furnish appropriate auxiliary aids where necessary to afford an individual with handicaps equal opportunity to * * * enjoy the benefits of a program or activity receiving Federal financial assistance." "Appropriate auxiliary aids" for sight-impaired persons include Brailled materials, audio recordings, and the provision of a reader. 24 C.F.R. 8.3. Also, as previously noted, the lease agreement required GMHA to send notices, which we construe to include notices regarding re-certification, in an accessible format for sight-impaired persons.
We find that the equities of this case weigh in favor of Manning. First, Manning is blind; a fact known by GMHA. Second, the notices sent to Manning regarding re-certification were not in an accessible format, and there is no indication that Manning had anyone to aid her in reading the notices. Third, GMHA failed to provide any auxiliary aid to help Manning in the completion of the packet. In fact, when Manning requested that GMHA provide her with assistance, the request was summarily denied. Fourth, Manning did attempt to comply with the re-certification procedure. She arrived at the offices of GMHA on the prescribed date; however, the Red Cross driver who transported her had brought the wrong packet. She did supply her income verification at that time. Finally, Manning was not able to obtain transportation back to GMHA until two days later. However, at that time, she had the correct packet for re-certification.
Under the circumstances of this case, it was not unreasonable for Manning to request GMHA's help with the recertification. Had GMHA provided minimal help, the packet would have been submitted in a timely fashion. Furthermore, when Manning did appear on the deadline date with her income verification, surely equity would allow her a few more days to arrange transportation to bring the correct packet. Alternatively, GMHA could have helped Manning complete a duplicate packet on the date she appeared. In any event, we find that Manning's breach of the lease agreement was, in no small part, due to the failure of GMHA to aid her in the completion of the packet. Accordingly, we believe that she was entitled to equitable relief.
The Third Assignment of Error is sustained, and the Fourth Assignment of Error is overruled.
 V
Manning's First and Third Assignments of Error having been sustained, the judgment of the Fairborn Municipal Court isReversed and Vacated.
BROGAN and YOUNG, JJ., concur.
Copies mailed to:
Phillip L. Beard
Kristen L. Louderback
Hon. Catherine M. Barber
[1] The record indicates that Manning was not aware that she had received a re-certification packet or any notices regarding the need to complete the packet. There is no indication that she had any assistance with her mail.
[2] On both trips to the GMHA offices, Manning had to arrange for a volunteer to transport her. According to her brief, the person transporting her handed her the wrong packet.
[3] Although GMHA filed a notice of dismissal, Manning has pursued this appeal. She contends that once her notice of appeal was filed, it was too late to dismiss the action in the trial court. We agree.