**BELLA VISTA APARTMENTS, d.b.a. Grandview Apts./Showe Management Corporation**

v.

**HERZNER et al.**

Clermont County Municipal Court, Ohio,
Civil Division.

No. 02CVG00633.

Decided Aug. 11, 2003.

David D. Donnett, for plaintiff Bella Vista Apartments, d.b.a. Grandview Apts./Showe Management Corp.

Mark B. Lawson and Legal Aid Society of Cincinnati, for defendants Frank Herzner et al.

---

THOMAS R. HERMAN, Judge.

{¶ 1} On April 24, 2003, this matter came before the court pursuant to the plaintiff's complaint sounding in forcible entry and detainer, which was filed on February 28, 2002. The plaintiff was represented by counsel David D. Donnett. The defendants were present and represented by counsel Mark Lawson. Upon hearing the testimony and arguments of the parties, the court took the matter under advisement. In consideration of the evidence and the pertinent case law, the court herein renders a decision as follows.

{¶ 2} The defendant herein, Frank Herzner, has been a tenant in the plaintiff's subsidized housing apartment complex, Bella Vista, for approximately 14 years. His sole source of income is from Social Security disability. Prior to the institution of this action, Frank Herzner had most recently signed a lease agreement with the defendant on April 9, 2001. At the time that Herzner signed the lease agreement, he was living in a three-bedroom apartment at Bella Vista with two of his children. Under the general restrictions of the lease, Herzner was not allowed to give accommodations to roomers, lodgers, or any other persons not listed on the owner's certification of compliance with HUD's tenant eligibility and rent procedures.

{¶ 3} On September 18, 2001, Frank Herzner married Priscilla Dakin, who had three children living with her at the time of the marriage. (The two youngest children are twins, and Frank Herzner is their father.) The new Mrs. Herzner and her three children moved into Bella Vista with Frank Herzner and his other two children after the wedding. Plaintiff's agents were not aware of this change in occupancy until they were apprised of the situation in the course of a welfare-fraud investigation that the Clermont County Department of Job and Family Services was conducting.

{¶ 4} In October 2001, the plaintiff agreed to let the defendants stay in the apartment until January 1, 2002, allowing some time for the defendants to find a new apartment. On January 10, 2002, the plaintiff served the defendants with a 30-day notice to leave the premises and notice of proposed termination of tenancy. On February 11, 2002, the defendants were served with a ten-day notice to leave the premises and notice of proposed termination of tenancy. The

defendants were unable to find a new apartment and failed to vacate the premises as requested. The plaintiff then filed this action.

{¶ 5} In early February 2002, the plaintiff's agents agreed to let Priscilla Herzner go through the application process to see whether she qualified to become a tenant at Bella Vista. All adults had to apply and qualify to live there. The plaintiff's agents then discovered that Priscilla Herzner was a former resident of Bella Vista Apartments herself. She was evicted from the apartments in October 1998 and owed money to the landlord at the time of the eviction. Thus, Priscilla Herzner was ineligible to become a resident of Bella Vista again, according to the plaintiff's guidelines.

{¶ 6} The plaintiff asserts that it has good cause to evict the defendants, since additional occupants are residing on the premises without management's permission. The defendants argue that they were not given a three-day notice as required pursuant to R.C. 1923.04, and that, consequently, this court does not have jurisdiction to entertain this action in forcible entry and detainer. The case law, however, indicates that one notice may fulfill both federal regulations and state law. The same document can serve as notice under state law, the rental agreement, and federal regulations as long as the document "complies with all of their respective applicable requirements." *Sandefur Co. v. Jones* (1982), 9 Ohio App.3d 85, 89, 9 OBR 135, 458 N.E.2d 390. In *Sahara Apts. v. Brown–Austin* (June 7, 1993), Stark App. No. CA–9028, 1993 WL 221253, the federally required ten-day notice also served to fulfill the three-day notice requirement of R.C. 1923.04, since the ten-day notice displayed the mandatory language required by R.C. 1923.04 in a conspicuous manner. See, also, *Pataskala Green II v. Strickler* (June 25, 1991), Licking App. No. CA–3581, 1991 WL 122358. In the present case, the ten-day notice that was served upon the defendants displayed the mandatory language of R.C. 1923.04 in a conspicuous manner. Thus, the court finds that the ten-day notice also satisfied the requirements of R.C. 1923.04. Since the notice requirements have been fulfilled, defendants' contention that this court lacks jurisdiction to hear this matter is without merit.

{¶ 7} Next, counsel for the defendants asks this court to apply its powers of equity to the instant situation and deny the relief requested by the plaintiff. A municipal court has authority to address equitable defenses in forcible entry and detainer actions. R.C. 1901.18; *Terra Mgt. Co. v. Bishop* (Jan. 2, 1987), Montgomery App. No. CA9919, 1987 WL 5312. In fact, when presented with equitable defenses, it would be error for the court not to address the equitable considerations. *Gorsuch Homes, Inc. v. Wooten* (1992), 73 Ohio App.3d 426, 597 N.E.2d 554. "[I]t is the responsibility of the court to weigh the equitable considerations before imposing a forfeiture." Id. at 436, 597 N.E.2d 554. "[E]quity abhors a forfeiture and will only decree it when such relief is clearly

required." *Peppe v. Knoepp* (1956), 103 Ohio App. 223, 224, 74 Ohio Law Abs. 79, 3 O.O.2d 281, 140 N.E.2d 26; see, also, *Lucas Metro. Hous. Auth. v. Carmony* (June 15, 2001), Lucas App. No. L–00–1296, 2001 WL 672150.

{¶ 8} A Section 8 housing tenant has a constitutionally protected property interest in continued occupancy in federally subsidized housing. *Gorsuch,* supra, and *Belvoir Cliffs Apt. Ltd. v. Bembry* (1978), 56 Ohio Misc. 37, 10 O.O.3d 458, 383 N.E.2d 1170. This tenancy is renewable at the option of the tenant for the life of the tenant. *Cincinnati Metro. Hous. Auth. v. Harris* (June 15, 1983), Hamilton App. Nos. C–820540 and C–820541, 1983 WL 8893. Good cause must be shown before a tenant can be evicted from federally subsidized housing. *Gorsuch* and *Belvoir,* supra. An analysis of "good cause" rests largely upon public-policy considerations. *Fairborn Apts. v. Herman* (Jan. 31, 1991), Greene App. No. 90CA28, 1991 WL 10962. In Section 8 leases, "good cause" for termination exists, inter alia, when there's a material noncompliance with the lease. Section 247.3, Title 24, C.F.R. "Material noncompliance" with the terms of the lease includes "one or more substantial violations of the lease." *Sandefur,* supra.

{¶ 9} In a couple of Ohio cases, Section 8 tenants have been evicted for a material breach of the lease when the tenants allowed unauthorized persons to stay in their housing units. In *New Boston Kiwanis Housing Dev. Corp. v. Sparks* (Apr. 14, 1992), Scioto App. No. 1957, 1992 WL 79561, the tenant allowed an unauthorized, unrelated male to spend a "substantial" amount of time on the premises. The tenant was also the subject of noise complaints. The court held that the presence of the unauthorized male constituted a material breach of the lease, citing *Hi–Land Terrace v. Dinwiddie* (Mar. 1, 1985), Highland App. Nos. 546 and 552, 1985 WL 6560. In *Hi–Land Terrace,* the subsidized housing tenant allowed the father of her two children to live with her very soon after she moved into the premises. Evidently the couple would not have qualified for subsidized housing if the father had been listed on the application. There were also minor complaints concerning noise coming from the defendant's premises. The Fourth District Court of Appeals affirmed the trial court's judgment that there had been a material breach of the lease.

{¶ 10} This court is not aware of any Ohio cases involving unauthorized family members living in low-income housing. Of interest to this court is a case from New York in which the unauthorized person living on the premises was the tenant's granddaughter. *Greene Ave. Assoc. v. Cardwell* (Civ.Ct.2002), 191 Misc.2d 775, 743 N.Y.S.2d 842. Like the Ohio courts, the New York court recognized eligibility for Section 8 benefits to be a very exclusive and valuable right. Id. at 791, 743 N.Y.S.2d 842. The court took into consideration the proof

of actual harm, or lack thereof, to the landlord, as well as the impact that an eviction would have upon the tenant. (The Second District Court of Appeals conducted a similar balancing of the equities in *Gorsuch*, supra.) The court in *Greene Avenue Associates*, supra, reasoned that an eviction should not be so "disproportionate to the violation as to be shocking to one's sense of fairness," i.e., an eviction should not be "so grave in its impact * * * that it is disproportionate to the misconduct, incompetence, failure or turpitude of the individual, or to the harm or risk of harm to the agency or institution." Id. at 792, 743 N.Y.S.2d 842. The court also considered the public-policy consideration behind Section 8 housing. Section 8 housing recognizes the entire family as a tenant, entitled to occupancy and assistance. Id. Section 8 housing, among other things, is supposed to encourage family cohesion and assistance for the disabled. Id.

{¶ 11} This court must now balance the equities in the present case, since an equitable argument was raised by the defendants. In analyzing whether good cause exists to evict the defendants, the court must look at public-policy considerations, as other courts have done in similar situations. In the instant case, allowing the defendants to remain together as a family in their current apartment would promote the goals of family cohesion and assistance for the disabled, which are goals that Section 8 housing seeks to promote. Furthermore, in diverse situations, the courts of Ohio have recognized the importance of marriage. See, e.g., *Pena v. Northeast Ohio Emergency Affiliates, Inc.* (1995), 108 Ohio App.3d 96, 109, 670 N.E.2d 268; *State v. Thompson*, 150 Ohio App.3d 641, 2002-Ohio-7098, 782 N.E.2d 688; and *State v. Harford* (Mar. 6, 2001), Richland App. No. 00CA89, 2001 WL 227704. "Our courts should seek to protect, not impair, the marital relationship." Id. at 1, 2001 WL 227704. This goal should be no less important in the instant situation.

{¶ 12} The court must balance the harm that the landlord has or will suffer as a result of the tenancy versus the harm that will occur to the tenants if they are evicted. It appears to the court that the landlord here has suffered little, if any, damages as a result of the unauthorized persons living in Frank Herzner's apartment. There is no evidence that the defendants are behind in their rent or that they are the subject of complaints from other tenants. While the plaintiff notes that the defendants' apartment is overcrowded, the plaintiff has not presented evidence of any harm it has sustained as a result of the overcrowding. Any harm to the landlord is more prospective in nature at this point. If actual harm is created by the additional occupants in Herzner's apartment, the court may provide recourse at the appropriate time. At this time, however, the gravity of harm that would be caused by the defendants' eviction, such as potential homelessness or separation of family, outweighs the interests that the plaintiff seeks to protect. For these reasons, the court holds that the defendants'

noncompliance with the terms of the lease is not of such a substantial nature as to warrant eviction.

{¶ 13} By so holding, this court in no way encourages noncompliance with lease requirements, and the defendants must recognize that there are certainly some situations in which noncompliance will result in eviction despite any equitable considerations. If the defendants fail to abide by the terms of the lease agreement, causing harm to the landlord in the future, the landlord can bring another action. Furthermore, the defendants should take measures to find other housing as soon as possible, since the issue of overcrowding may take on a greater significance as their children grow.

{¶ 14} In conclusion, having considered the equities of the instant action, the court hereby denies the plaintiff restitution of the premises described in the complaint. Costs shall be taxed to the plaintiff. Counsel for the defendants shall prepare an entry in accordance with this decision.

Judgment for defendants.