[Cite as *Greater Dayton Premier Mgt. v. Hicks*, 2025-Ohio-5655.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| GREATER DAYTON PREMIER MANAGEMENT | : | C.A. No. 30561 |
| Appellee | : | Trial Court Case No. 23-CVG-6500 |
| v. | : | (Civil Appeal from Municipal Court) |
| CANDACE HICKS, ET AL. | : | **FINAL JUDGMENT ENTRY & OPINION** |
| Appellant | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on December 19, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Mary K. Huffman*

MARY K. HUFFMAN, JUDGE

EPLEY, P.J., and HANSEMAN, J., concur.

**OPINION**
MONTGOMERY C.A. No. 30561

CANDACE HICKS, Appellant, Pro Se
CHRISTOPHER C. GREEN, Attorney for Appellee

HUFFMAN, J.

{¶ 1} Candace Hicks appeals pro se from the trial court's judgment overruling her objections to a magistrate's decision, which found that Hicks's failure to make payments under her residential lease with Greater Dayton Premier Management ("GDPM") was willful, that she was not entitled to equitable relief, and that GDPM was entitled to restitution of the public housing premises where Hicks resided. Hicks's appeal is subject to dismissal for failure to comply with App.R. 16, and alternatively, it fails on the merits. For the reasons that follow, the judgment of the trial court is affirmed.

**Facts and Procedural History**

{¶ 2} On November 27, 2023, GDPM filed a complaint for eviction against Hicks. GDPM alleged that pursuant to the parties' lease, Hicks had failed to pay for damages to the premises beyond reasonable wear and tear and had failed to pay $139.35 in maintenance charges. According to the complaint, GDPM issued a notice of termination of lease on October 17, 2023. Hicks answered the complaint on December 20, 2023, asserting equitable defenses.

{¶ 3} An eviction hearing occurred on February 15, 2024, and the parties filed post-hearing briefs. The magistrate issued a decision on February 28, 2024, finding that GDPM was entitled to restitution of the premises. The trial court adopted the decision of the magistrate the same day.

2

{¶ 4} On March 8, 2024, Hicks requested a stay of execution pending objections to the magistrate's decision, and she filed a motion to supplement her objections. Hicks filed objections to the magistrate's decision on March 8, 2024. The court granted Hicks's motions to stay and to supplement her objections.

{¶ 5} On March 24, 2024, Hicks supplemented her objections to the magistrate's decision. GDPM responded to the objections on June 7, 2024, and Hicks filed a reply. The trial court issued its decision on June 30, 2025. Hicks filed a timely notice of appeal.

## Analysis

### I

{¶ 6} In her brief, Hicks rehashes the facts of this matter and refers to additional facts outside the record, such as Social Security income she now claims to receive. She contends that the eviction "feels like retaliation is going on, discrimination and harassment," and she denies that "$139.35 dollars is a good reason to put me out." Hicks, though, has failed to comply with the rules for a proper brief pursuant to App.R. 16(A) in every respect. Her brief does not include a table of contents or a table of cases, statutes, or other authority, as required by App.R. 16(A)(1) and (2). Absent are a statement of the issues presented and a brief statement of the case as mandated by App.R. 16(A)(4) and (5). Most significantly, there is no statement of the assignments of error for review or a reference to the place in the record where each error is reflected pursuant to App.R. 16(A)(3).

{¶ 7} "'Litigants who choose to proceed pro se are presumed to know the law and correct procedure, and [they] are held to the same standard as other litigants.'" *State v. Howard*, 2025-Ohio-1393, ¶ 4, quoting *Yocum v. Means*, 2002-Ohio-3803, ¶ 20 (2d Dist.). "[A] pro se litigant 'cannot expect or demand special treatment from the judge, who is to sit

3

as an impartial arbiter.'" *Yocum* at ¶ 20, quoting *Kilroy v. B.H. Lakeshore Co.*, 111 Ohio App.3d 357, 363 (8th Dist. 1996).

{¶ 8} "Compliance with [App.R. 16] is mandatory." *State v. Obermeyer*, 2024-Ohio-4508, ¶ 13 (2d Dist.). "This rule reflects the principle that an appellant bears the burden of affirmatively demonstrating error on appeal." *State v. Roper*, 2023-Ohio-1738, ¶ 11 (9th Dist.), citing *In re J.S.*, 2016-Ohio-5120, ¶ 12 (9th Dist.). Here, Hicks's "failure to comply with App.R. 16 is tantamount to failing to file a brief in this matter." *Obermeyer* at ¶ 13. "Pursuant to App.R. 12(A)(2), we are not required to address issues that are not argued separately as assignments of error, as required by App.R. 16(A)." *Id.*, citing *Kremer v. Cox*, 114 Ohio App.3d 41, 60 (9th Dist. 1996). This "deficiency permits this Court to dismiss [Hicks's] appeal" without any analysis. *Id.*, citing *Erdman v. Williams*, 2013-Ohio-980, ¶ 9 (5th Dist.).

II

{¶ 9} Even if we construe Hicks's brief and reply to argue that the trial court erred in overruling her objections to the magistrate's decision, which we are not required to do, the record is clear that the trial court did not abuse its discretion in doing so. As discussed below, a material breach of the lease occurred when Hicks willfully violated its terms, and she was not entitled to equitable relief.

{¶ 10} "In accordance with Civ.R. 53, the trial court must conduct an independent review of the facts and conclusions of law contained in the magistrate's report and enter its own judgment." *Lincoln v. Callos Mgt. Co.*, 2010-Ohio-4921, ¶ 5, (2d Dist.), citing *Dayton v. Whiting*, 110 Ohio App.3d 115, 118 (2d Dist. 1996). A trial court's standard of review of a magistrate's decision is thus de novo. *Id.*

4

{¶ 11} This court reviews a trial court's adoption of a magistrate's decision for abuse of discretion. *Id.* at ¶ 6. "When an appellate court reviews a trial court's adoption of a magistrate's report for abuse of discretion, such a determination will only be reversed where it appears that the trial court's actions were arbitrary or unreasonable." *Id.*, citing *Proctor v. Proctor*, 48 Ohio App.3d 55, 60-61 (3d Dist. 1988). "Presumptions of validity and deference to a trial court as an independent fact-finder are embodied in the abuse of discretion standard." *Id.*

{¶ 12} According to the evidence presented at the eviction hearing, under the lease, Hicks paid zero rent for her housing, and she received a utility allowance from GDPM. Hicks resided at her home for seven years prior to the eviction, and she had no income during that time beyond her allowance for utilities.

{¶ 13} On April 18, 2023, after a monthly inspection, a maintenance worker presented Hicks with a completed work order for $75 for installing a new smoke alarm, rehanging an existing smoke alarm, and replacing the nine-volt batteries in her smoke alarms. A separate work order for $80 was presented to Hicks the following month for the repair of window screens. Hicks refused to sign both orders when they were given to her. The maintenance worker testified he would not have charged Hicks to repair the screens if the damage had been from ordinary wear and tear.

{¶ 14} The tenant accountant for GDPM identified three account statements sent to Hicks. The first, from April 2023, reflected the above charge of $75 and a credit balance of $15.65, with a total due of $59.35. A May 2023 statement reflected the charge for the smoke detectors, the credit balance, and the $80 charge for the window screens, for a total due of $139.35. The third statement, from September 2023, reflected a balance forward of

$139.35. The tenant accountant testified that she had never accepted payment from a tenant after a notice of termination had expired.

{¶ 15} The lease required Hicks to "pay reasonable charges (other than for wear and tear) for the repair of damages to the dwelling unit . . . caused by the Tenant." GDPM was required by the lease to notify Hicks of the specific grounds for "any proposed adverse action," including "a proposed lease termination," and to "afford [her] the opportunity for a hearing under the GDPM Grievance Procedure for a Grievance concerning a proposed adverse action." The lease stated that it "may be terminated only for serious or repeated violations of material terms of the Lease, such as failure to make payments due under the lease . . . ."

{¶ 16} The termination of lease was served on Hicks on October 17, 2023, and it stated that GDPM "is proposing to terminate your lease on 11/16/2023" for unpaid maintenance charges of $59.35 and a tenant damages charge of $80. It indicated, "You have the right to reply to this notice and to examine GDPM documents relevant to this termination. You also have the right to request a hearing according to GDPM's Grievance procedure." The notice further stated: "If you remain in violation of your lease after 11/16/2023 the following applies to you: 'Your lease has been terminated and you are being asked to vacate the premises before 11/19/2023.'" The following text appeared in bold type within a bolded box: "YOU ARE BEING ASKED TO LEAVE THE PREMISES. IF YOU DO NOT LEAVE, AN EVICTION ACTION MAY BE INITIATED AGAINST YOU. IF YOU ARE IN DOUBT REGARDING YOUR LEGAL RIGHTS AND OBLIGATIONS AS A TENANT, IT IS RECOMMENDED THAT YOU SEEK LEGAL ASSISTANCE."

{¶ 17} Hicks did not pay the amount due within the 33 days allowed. She also did not ask for a grievance hearing on any of the charges cited in the termination notice. Hicks

6

testified that only one smoke detector was replaced and that the maintenance worker "did not fix everything that they are charging me for." She stated that if she were evicted, she could be homeless. Hicks claimed that she had received an eviction notice a few months before the instant matter in a separate case that was later dismissed, and she initially believed that the instant matter "was over with" based on that prior dismissal. Hicks identified a money order for GDPM in the amount $139.35, dated December 7, 2023. She stated that her offer of payment by means of the money order was refused.

{¶ 18} The magistrate acknowledged that Hicks had no source of income, attempted to make payment after the complaint for eviction was filed, could be homeless if evicted, and had a substantial interest in "maintaining her public housing that she has had for the last seven years." It was significant to the magistrate, however, that there was no evidence that prior to the complaint, Hicks had attempted to enter into a payment agreement or to make any payment toward the charges. The magistrate found that "her nonpayment appears to be willful and not purely the result of insufficient funds" and that equity principles accordingly did not apply. The magistrate found that Hicks materially breached her lease by failing to pay for the charges reflected on the account statements and that GDPM was entitled to restitution of the premises.

{¶ 19} In her objections, Hicks argued that her 100% rent subsidy established that it was unreasonable to expect her to timely make payment in full. She argued that she was confused about whether she still owed the money after the prior case against her was dismissed. Hicks asserted that she obtained the money order after the complaint was filed.

{¶ 20} Hicks claimed that there was "no evidence that [she] acted maliciously or willfully in not paying the maintenance fees." She asserted that the docket reflected that the complaint for eviction was served on December 5, 2023, and she obtained the money

7

order two days later. Hicks argued that GDPM never offered her a payment plan, and she directed the court's attention to language in her account statements reflecting that partial payments and cash would not be accepted. Hicks argued that the language established that GDPM would not enter into a payment plan. Hicks argued that becoming homeless "would be a harsh outcome for $139.35."

{¶ 21} Finally, Hicks asserted that she had "a constitutionally protected property interest in continued occupancy of federally subsidized housing." She asserted that her tenancy could not be terminated without good cause. Hicks claimed that the harm to her in losing her housing outweighed any interest GDPM sought to protect.

{¶ 22} GDPM responded that the magistrate properly weighed the controlling equitable factors and determined that they did not weigh in Hicks' favor and that her nonpayment was willful. GDPM noted that "only on the date of trial did Ms. Hicks provide any information that she was unable to afford to make the payments, and, due to that, the eviction action against her must fail." GDPM argued that for months Hicks willfully did not pay for the damage she caused, and she refused to sign work orders related to the repairs because she did not feel that she should have to pay the charges.

{¶ 23} The trial court found that the magistrate acknowledged and weighed the equitable arguments in Hicks's favor. The court noted that Hicks lacked a source of income and was qualified to live in subsidized housing for the last seven years. It recognized her substantial interest in maintaining her housing and acknowledged that were she evicted, she could be homeless. The court recognized Hicks's efforts to pay the balance owed, noting they occurred after the filing of the complaint but prior to trial.

{¶ 24} The court indicated that the issue "then [became] whether [Hicks] acted maliciously or willfully in failing to pay the balance owed." The court found "her lack of

8

payment to be willful, despite her testimony at trial." Having so found, the court concluded that it was barred from considering the equitable arguments against granting GDPM's request for restitution. The court overruled Hick's objections.

{¶ 25} It is true that "Ohio courts have the power, and often exercise it, to relieve a tenant from the consequences of forfeiture of a leasehold interest." *Gorsuch Homes, Inc. v. Wooten*, 73 Ohio App.3d 426, 435 (2d Dist. 1992). This court's prior decision in *Gorsuch Homes* "concerned Section 8 housing agreements and the rights of tenants in federally subsidized housing." *Buckeye Mobile Home Estates*, 2022-Ohio-3927, ¶ 35 (6th Dist.). Counsel for Hicks directed the magistrate's attention to *Gorsuch Homes* at the conclusion of the eviction hearing and in her objections to the magistrate's decision. Hicks argued that there were equitable factors that the court should consider, such as the lack of evidence that Hicks acted maliciously or willfully and that she had not refused to pay the money but "was just trying to come up with the money."

{¶ 26} In *Gorsuch Homes,* Linda Wooten appealed from an eviction order in municipal court. Like Hicks, she qualified for a 100% rent subsidy and received a utility voucher. *Id.* at 429. In November 1990, Wooten's teenage son painted graffiti on property of the apartment complex where she resided, which was owned by Gorsuch Homes, Inc. ("Gorsuch"). *Id.* Paragraph 23 of the lease agreement between Wooten and Gorsuch stated that "a material noncompliance with the lease justifying termination of the tenancy includes 'the failure to *reimburse* the Landlord within 30 days for *repairs made* under paragraph 11 of this agreement [for damage caused by the Tenant, her family, or visitors]." (Emphasis and bracketed text in original.) *Id.*

{¶ 27} The manager of the complex, Rice, "immediately demanded that [Wooten] pay the entire amount of the repair estimate, before the work was done and before the actual

9

cost was finally determined." *Id.* at 429. Wooten "requested a breakdown of the bill and disputed the amount, believing that she should not have to pay for the entire amount because her son did only part of the damage." *Id.* at 429-430. Wooten testified that she offered to make monthly payments and her offer was rejected. *Id.* at 430.

{¶ 28} On March 26, 1991, Wooten met with Rice about a juvenile restitution program through which her son was scheduled to make restitution to Gorsuch. *Gorsuch Homes*, 73 Ohio App.3d at 430. The following day, Rice wrote to Wooten advising her that "'a response to this matter needs to be received at this office within ten (10) days. At the end of this period legal action will proceed, if no response is given.'" *Id.* Wooten advised Rice that she wanted to meet with the regional property manager, Fout, in an effort to resolve the dispute, and she was told that she would have to request such a meeting in writing and was provided Fout's address. *Id.* "On April 11, 1991, Rice served Wooten a ten-day notice to leave the premises that was based on Wooten's refusal to pay the damages that had been demanded on March 26." *Id.*

{¶ 29} The notice cited "Material Non-Compliance of Lease," "Non-Payment of Damages Para:11-A -Payment due within 30 days," and "Did not comply with meeting March 26, 1991." It stated that Wooten had "10 days within which to discuss this proposed termination of tenancy with the Landlord" and that if "you request the meeting, the Landlord agrees to discuss the termination with you." (Emphasis deleted.) *Id.* at 430-431.

{¶ 30} Wooten called Rice and again told her she wanted to meet with Fout. *Id.* at 431. Fout refused to meet with her. *Id.* No meeting was held regarding payment for the damages. *Id.* On May 21, 1991, Rice served Wooten with another 10-day notice, Wooten again requested a meeting, but no meeting occurred. *Id.* On June 3, 1991, Rice served

10

Wooten with a three-day notice to vacate based upon Wooten's failure to comply with the ten-day notice. *Id.* Wooten again offered to pay in installments, and Rice refused. *Id.*

{¶ 31} The referee found that Wooten had materially breached her lease by failing to reimburse the landlord for repairs made, and the trial court entered a judgment of restitution. *Gorsuch Homes*, 73 Ohio App.3d at 431. Wooten argued on appeal, in part, that the trial court erred in failing to grant equitable relief. *Id.* at 435. In *Gorsuch Homes*, this court noted that "generally, courts, in balancing the equities, will relieve the tenant from the harsh consequences of a forfeiture where the payment of money damages will adequately compensate the landlord." *Id.* at 436. This court observed that the tenant "ha[d] a substantial equitable interest in maintaining her fully subsidized housing," and "that her subsidy [of] one hundred percent [was] an indication of her low income status and demonstrate[d] that it would [have been] unreasonable to expect her to make a [full] payment . . . within thirty days." *Id.* The court further noted the trial court's responsibility to weigh equitable considerations such as Wooten's income; the hardship to her if she were to be evicted, including her probable difficulty in obtaining other subsidized housing; and the fact that money damages would compensate the landlord. *Id.* This court found that the trial court had failed to consider Wooten's equitable defenses and reversed the judgment of the trial court. *Id.*

{¶ 32} In contrast to *Gorsuch Homes*, the trial court in this case found Hicks's conduct to be willful, and willful conduct (or the lack thereof) can be a factor in determining whether equitable relief is appropriate. In *Cincinnati Metropolitan Housing Authority v. Green,* 41 Ohio App.3d 365, 370 (1st Dist. 1987), the court recognized that tenants may raise affirmative defenses to eviction for nonpayment of rent, such as showing that nonpayment was due to circumstances beyond their control, that they promptly informed the landlord of

11

the situation, or that they made diligent efforts to pay as soon as possible. Such actions demonstrate the tenant's level of responsibility and effort to comply with obligations, which are relevant to an equitable analysis.

{¶ 33} Yet equity "'refuses to lend its aid in any manner to one seeking its active interposition who has been guilty of inequitable conduct in the matter with relation to which he [or she] seeks relief.'" *Woda Mgt. & Real Estate, L.L.C. v. Grant*, 2017-Ohio-7114, ¶ 23 (3d Dist.), quoting *Kinsman Nat. Bank v. Jerko*, 111 Ohio St. 633, 635 (1924). In a forcible entry and detainer action, the First District Court of Appeals declined to intervene equitably in favor of tenants who had failed to communicate with the landlord about late payments and had not attempted to tender payment until after the eviction notice had expired. *Id.* at ¶ 27. The court found that the tenants' conduct weighed against equitable intervention because they were not without fault and had not taken reasonable steps to address their breach of the lease. *Id.* at ¶ 27-29.

{¶ 34} As the trial court found in this case, Hicks had a substantial interest in maintaining her public housing and could be homeless if evicted. Contrasting the tenant in *Gorsuch Homes*, Hicks was not presented with an estimate for repairs. Instead, Hicks received two completed work orders, both of which she refused to sign. There was no suggestion, as in *Gorsuch Homes*, that anyone but Hicks was responsible for the charges on the work orders. Hicks's response to the charges also contrasts *Gorsuch Homes*. Unlike Hicks, the *Gorsuch Homes* tenant immediately disputed the charges and repeatedly attempted to resolve them over a period of months by offering to make payments right away, meeting with the apartment complex's property manager, requesting meetings with the apartment company's regional manager, and finally offering to pay in installments. Hicks made no such effort until after the complaint for eviction was filed. Nor did Hicks promptly

claim and so inform GDPM that her failure to pay was due to circumstances beyond her control. Hicks did not communicate with GDPM and did not attempt to tender payment until after the notice of eviction had expired. Most significantly, the amount due to GDPM is irrelevant. Hicks's willful and ongoing material breach of the lease is dispositive. Put differently, Hicks's conduct weighed against equitable intervention. She was not without fault and did not take steps to address the material breach of her lease. Accordingly, the trial court did not abuse its discretion in determining that Hicks's behavior was willful and that she was not entitled to equitable relief.

{¶ 35} Even assuming that Hicks had properly raised an assignment of error claiming that the trial court abused its discretion in adopting the magistrate's decision, her implied assignment of error is overruled.

## Conclusion

{¶ 36} Based on the foregoing, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

EPLEY, P.J., and HANSEMAN, J., concur.

13