**Mary Jane NEALY, Appellant,**

v.

**SOUTHLAWN PALMS APARTMENTS, Appellee.**

No. 01–05–00085–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 8, 2006.

Mark J. Grandich, Gulf Coast Legal Foundation, Houston, for Appellant.

Theadore R. Andrews, Houston, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and ALCALA.

## OPINION

SHERRY RADACK, Chief Justice.

This appeal arose from a forcible detainer action brought in the justice court by appellee, Southlawn Palms Apartments ("SPA") against appellant, Mary Jane Nealy, a tenant, for alleged violations of lease terms and conditions. Both the justice court and, on appeal, the county civil court at law ordered Nealy's eviction from

the premises. On appeal to this Court, Nealy complains of the following errors: (1) because SPA's notice of termination of tenancy failed, the evidence is legally insufficient to support the forcible detainer judgment; (2) the evidence of "mooning" other tenants is legally and factually insufficient to support the forcible detainer judgment; and (3) the trial court erred in admitting evidence that was never disclosed in response to proper discovery requests. We reverse the judgment and remand the cause.

## BACKGROUND

In January 2002, Nealy entered into a one-year written lease agreement with SPA, a federally subsidized apartment complex regulated by Section 8 of the Housing Act of 1937, 42 U.S.C. § 1437f (2000 & Supp.2005), and Title 24 of the Code of Federal Regulations, 24 C.F.R. § 882.101 (2006). The lease provided that the term would run from January 22, 2002 to January 21, 2003 and would automatically renew on a month-to-month basis at the expiration of its initial term. The lease also provided that SPA could terminate the tenancy for (1) a serious or repeated violation of the terms and conditions of the lease; (2) a violation of federal, state, or local law that imposed obligations on Nealy in connection with the occupancy or use of the contract unit and the premises; (3) criminal activity; or (4) other good cause. Before SPA could terminate the tenancy, the lease required that SPA provide a notice of termination that complied with United States Department of Housing and Urban Development ("HUD") requirements. *See* 24 C.F.R. § 882.101 (2006).

On April 28, 2004, SPA sent Nealy a "30 Day Notice to Vacate" the premises and listed two reasons for the notice to vacate: (1) "Owner desires possession" and (2) "Un-desirable tenant behavior." SPA later filed this forcible detainer action against Nealy, citing "un-desirable tenant behavior" as the sole ground for eviction. During discovery, Nealy served a written interrogatory asking SPA to identify each act of undesirable tenant behavior on which SPA relied for evicting Nealy, including "what was done, by whom and when in breach of the lease." SPA responded that "Ms. Nealy breached her lease by violating the rules of Southland Palms Apts. and by violated [sic] the Blue Star Addendum. It was reported that Ms. Nealy mooned another tenant." [1]

At trial, over objection, SPA's manager testified that Nealy continuously loitered on the premises and rode a four-wheeler or tractor on the sidewalks, nearly hitting children on one occasion. SPA also introduced evidence, over objection, that Nealy and a guest had each been the victim of assaults during Nealy's tenancy.

## NOTICE OF TERMINATION

In her first point of error, Nealy argues that the notice failed to comply with HUD's specificity requirement for termination notices and that there is no evidence to support the forcible detainer action because SPA's notice of termination of tenancy failed, as a matter of law, to terminate Nealy's tenancy.

■■■ To terminate a tenancy in federally subsidized housing, federal regulations and due process both require adequate notice detailing the grounds for termination. *Moon v. Spring Creek*

1. The Blue Star Addendum was an addendum to the original one-year lease, and it provided (1) that SPA would have zero tolerance for any drug-related activity and continuous lease violations and (2) that residents who executed or renewed a lease agreed not to engage in or to facilitate any criminal activity.

*Apartments,* 11 S.W.3d 427, 433 (Tex. App.-Texarkana 2000, no pet.). The rules and regulations set forth by HUD mandate that the landlord's termination notice "[s]tate the reasons for such termination with enough specificity to enable the [tenant] to prepare a defense." 24 C.F.R. § 882.511(d)(2)(i) (2006); *see* 24 C.F.R. § 247.4(a)(2) (2006) (providing the same).[2] Because SPA participated in HUD's federal subsidy program, SPA obligated itself to act in accordance with federal rules and regulations. *See Newhouse v. Settegast Heights Vill. Apartments,* 717 S.W.2d 131, 132 (Tex.App.-Houston [14th Dist.] 1986, no writ). The purpose of requiring that the notice state reasons for the termination is "to insure that the tenant is adequately informed of the nature of the evidence against him so that he can effectively rebut that evidence." *Escalera v. New York City Hous. Auth.,* 425 F.2d 853, 862 (2d Cir. 1970). Thus, termination notices have been found to be insufficient when they contain only one sentence, are written in "vague and conclusory" language, or fail to set forth a factual statement of the reason for termination. For instance, in *Associated Estates Corp. v. Bartell,* the court found the following language to be insufficient to notify the tenant of the specific grounds for termination of her lease: "[s]erious, repeated damage to unit. Repeated disturbance." 24 Ohio App.3d 6, 10, 492 N.E.2d 841, 846 (1985). The court characterized the notice as "blanketed in broad language" and concluded that it did not afford the tenant due process, as required by the federal regulations. *Id.*

Similarly, in *Housing Authority of Dekalb County v. Pyrtle,* the court determined that a notice was deficient because it failed to provide the tenant with the reasons upon which the termination was based sufficient to afford the tenant an opportunity to prepare a meaningful rebuttal. 167 Ga.App. 181, 183, 306 S.E.2d 9, 11 (1983). The *Pyrtle* notice stated the following reason for termination:

> Repeated incidents of intoxication and irresponsible use of the kitchen facilities in your Unit [which] have imposed a threat [to] the peaceful enjoyment and safety of your neighbors. This conduct results in a violation of the provisions [of the lease and because of the violations] by you ... you are hereby notified that your Lease shall be terminated in ten days from the date of this Notice.

167 Ga.App. at 182, 306 S.E.2d at 10–11 (brackets in original).

Courts have found short, one-sentence termination notices inadequate even when they specified the individual involved in the wrongdoing. *Escalera,* 425 F.2d at 858 n. 2, 862 (indicating the reasons for termination were the "[r]ecord of antisocial activities and arrests of your son, Fred, Jr., constituting a threat to the peace and safety of the community" and "[i]llegal acts of Mr. Humphrey, having an adverse effect on the project and its tenants"). Also, courts have held rather extensive notices to be inadequate when they failed to notify the tenant of the dates of the alleged violations. *Cuyahoga Metro. Hous. Auth. v. Younger,* 93 Ohio App.3d 819, 826, 639 N.E.2d 1253, 1257 (1994).

---

**2.** Title 24 section 882.511 of the Code of Federal Regulations applies specifically to the Section 8 Moderate Rehabilitation Program, the specific type of federal subsidy in this case. 24 C.F.R. § 882.101(a) (2006). Title 24 section 247.4 of the Code of Federal Regulations applies to all decisions by a landlord to terminate the occupancy of a tenant in a subsidized project under Section 8 of the Housing Act of 1937. 24 C.F.R. §§ 247.1–.2 (2006).

■ In the present case, the notice sent to Nealy stated only "Owner desired possession" and "Un-desirable tenant behavior." This notice failed "to set forth a factual statement of the incident or incidents which constituted the grievance." *Hous. Auth. of King County v. Saylors*, 19 Wash.App. 871, 874, 578 P.2d 76, 79 (1978). The notice contained one vague and broad allegation that Nealy engaged in some type of undesirable behavior, but did not set forth the behavior SPA was complaining about. The notice also failed to notify Nealy of the dates of any incidents or of the people involved. Absent any of these details, the notice of termination failed to meet the specificity requirements outlined in the federal regulations and existing case law. We conclude the notice provided to Nealy was inadequate.

■ SPA contends that, even if the notice was inadequate, Nealy has not been harmed because she had actual knowledge of the reasons for her lease termination. SPA relies on *Hill v. Paradise Apartments, Inc.* for this proposition. 182 Ga. App. 834, 357 S.E.2d 288 (1987). In *Hill*, the court held that when a tenant has not been harmed by the landlord's failure to provide adequate reasons for the termination of the tenancy, the judgment ordering eviction will not be overturned on appeal. 182 Ga.App. at 836, 357 S.E.2d at 290 (citing *Smith v. Hendrix*, 162 Ga.App. 299, 302, 290 S.E.2d 504, 507 (1982)). The *Hill* court based its conclusion on the grounds that (1) the tenant was sent a termination letter that specifically explained the wrongful conduct, (2) the tenant was given 10 days to discuss the basis

of her termination with the landlord, and (3) the tenant had an attorney, who actively pursued pretrial discovery, to represent her. 182 Ga.App. at 837, 357 S.E.2d at 290.

■ Despite Georgia's harm requirement, many other jurisdictions, such as New Jersey, New York, Rhode Island, Connecticut, and Ohio, have held that inadequate notice deprives a court of subject-matter jurisdiction, thus requiring automatic reversal or dismissal, regardless of harm.[3] *Riverview Towers Assocs. v. Jones*, 358 N.J.Super. 85, 88, 90, 817 A.2d 324, 327 (2003); *Hedco, Ltd. v. Blanchette*, 763 A.2d 639, 643 (2000); *Jackson Terrace Ass'n. v. Paterson*, 155 Misc.2d 556, 557, 589 N.Y.S.2d 141, 142 (1992); *Cent. Brooklyn Urban Dev. Corp. v. Copeland*, 122 Misc.2d 726, 729, 471 N.Y.S.2d 989, 992 (1984); see *Bella Vista Apartments v. Herzner*, 125 Ohio Misc.2d 1, 4, 796 N.E.2d 593, 595 (2003); *Glastonbury Hous. Auth. v. Martinez*, No. 82600, 1995 WL 621849, at *2 (Conn.Super.Ct. Oct. 16, 1995); *Stratford Hous. Auth. v. Reese*, No. SPBR–9411 28443, 1995 WL 264020, at *2 (Conn.Super.Ct. April 7, 1995). The federal courts that have addressed deficient notices have not confronted the issue at hand because, in those cases, the tenants filed motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See *Escalera*, 425 F.2d at 862; *Swords to Plowshares v. Smith*, 294 F.Supp.2d 1067 (N.D.Cal.2002). Neither *Escalera* nor *Swords to Plowshares* engaged in a harm analysis after having found the termination notices deficient.

3. Nealy did not argue that the trial court lacked subject-matter jurisdiction. However, subject-matter jurisdiction cannot be conferred by consent, waiver, or estoppel at any stage of a proceeding. *Tourneau Houston, Inc. v. Harris County Appraisal Dist.*, 24 S.W.3d 907, 910 (Tex.App.-Houston [1st Dist.] 2000, no pet.). Lack of subject-matter jurisdiction is fundamental error that may be recognized by the appellate court, sua sponte. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 681 n. 6 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

One Texas case exists in which the issue arose, but the court passed on deciding if harm was required. In *Moon v. Spring Creek Apartments,* the Texarkana Court of Appeals found that the notice of eviction provided to the tenant was inadequate.[4] 11 S.W.3d at 434. The apartment complex argued that the inadequate notice did not require reversal because the error was harmless. *Id.* The court stated, "Either way [whether harm is required or there is a lack of subject-matter jurisdiction], reversal is required in this case, because the record supports a showing of harm in that Moon was unable to prepare her defense." *Id.* at 435. Thus, no definitive answer lies in Texas on whether harm is required or there is a lack of subject-matter jurisdiction when a notice to vacate federally subsidized housing is inadequate.

■ We look to the Texas Supreme Court's holding in *Dubai Petroleum Co. v. Kazi* to guide the resolution of this issue. *See* 12 S.W.3d 71, 76–77 (Tex.2000). In *Kazi,* the Texas Supreme Court disapproved of a long line of cases holding that, when a claim is based on a statute, the statutory provisions are mandatory, exclusive, and require compliance in all respects, or the trial court will lack subject-matter jurisdiction. *See id.* at 75–77. The *Kazi* court sided with the modern trend that treats failure to comply with statutory requirements as defeating a claimant's right to relief, but not defeating the trial court's jurisdiction:

> The modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.... The right of a plaintiff to maintain a suit, while frequently treated as going to the question of jurisdiction, has been said to go in reality to the right

of the plaintiff to relief rather than to the jurisdiction of the court to afford it.

*Id.* at 76–77 (citations omitted). *Kazi* and its progeny instruct courts to determine whether the Legislature or Congress intended the statutory requirement to be jurisdictional. *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser,* 140 S.W.3d 351, 358 (Tex. 2004); *Kazi,* 12 S.W.3d at 76. One indicator of legislative intent is a statute's purpose. *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 494 (Tex.2001) (stating that "[w]hen a statute is silent about the consequences of noncompliance, we look to the statute's purpose to determine the proper consequences"). As noted above, the purpose of the notice requirements under HUD is "to insure that the tenant is adequately informed of the nature of the evidence against him so that he can effectively rebut that evidence." *Escalera,* 425 F.2d at 862. This purpose would not be served by allowing a tenant to assert that a court has no subject-matter jurisdiction over such an action because of an inadequate notice. For instance, assuming that a tenant received a deficient notice, yet effectively rebutted the evidence and prepared a proper defense, dismissing the case based on subject-matter jurisdiction would fail to serve the purpose of the statutory requirement. We conclude that an inadequate notice does not deprive a court of subject-matter jurisdiction and that a harm analysis better fulfills the purpose of HUD's specificity requirements.

■ Now, we must determine whether Nealy was harmed by the inadequate notice. The court in *Moon* pointed to the following as evidence of Moon's harm: (1) Moon was unprepared to defend the action; (2) Moon filed no answer, made no

---

4. The notice stated that the tenant was in violation of lease provision 23B by "endan-

gering [the] welfare of other tenants." *Moon,* 11 S.W.3d at 433.

motion, and had no pretrial discovery; (3) she testified that she did not know why she was asked to leave; (4) Moon's counsel stated that he did not understand the basis for the eviction and could not prepare a proper defense; and (5) Moon's counsel failed to object to evidence of irrelevant past violations, arguably because he did not know which violations formed the basis for the eviction. 11 S.W.3d at 435. Thus, the court held that Moon had been harmed by the inadequate notice. *Id.*

Unlike in *Moon,* Nealy did file an answer and pursued pretrial discovery through written interrogatories and requests for production. Neither Nealy nor Nealy's counsel indicated that they could not prepare a proper defense, and Nealy's counsel did object to evidence of other alleged lease violations because counsel knew, or was under the impression, that only Nealy's alleged mooning of other tenants formed the basis for her eviction. Finally, SPA's manager testified that she actually met with Nealy to discuss Nealy's undesirable tenant behavior prior to terminating the tenancy. Under these facts, the present case is more analogous to *Hill,* in which the court determined that Hill was not harmed by the lack of notice because (1) Hill received a termination letter explaining the grounds for termination; (2) Hill was given 10 days to discuss the letter with management; and (3) Hill retained an attorney, who filed an answer and pursued pretrial discovery. 182 Ga.App. at 837, 357 S.E.2d at 290. Under these circumstances, the court concluded that "[i]f [Hill] and her attorney were not aware of the basis for the termination of her tenancy at the time of trial, it was not as a result of a deficient termination letter sent by [the management]." 182 Ga.App. at 837, 357 S.E.2d at 291. We agree with this reasoning and conclude that Nealy was not harmed by the inadequate notice.

*See* TEX.R.APP. P. 44.1(a). Accordingly, we overrule her first point of error.

## EVIDENTIARY COMPLAINTS

In her second and third points of error, Nealy complains about the evidence supporting her eviction. Nealy contends in her third point of error that the trial court erred in admitting evidence of Nealy's misconduct that was not disclosed in response to proper discovery requests. The interrogatory and answer at issue are as follows:

INTERROGATORY NO. FIVE

In the Plaintiff's Complaint For Forcible Detainer in this cause, [SPA] alleged that [Nealy] breached her lease by engaging in, "Un-desirable tenant behavior." Please identify each such act of "un-desirable tenant behavior" upon which [SPA] relies as a reason for evicting [Nealy] in this lawsuit. This request requires [SPA] to tell, for each such act, what was done, by whom and when in breach of the lease.

*Answer*

[Nealy] breached her lease by violating the rules of [SPA] and by violated [sic] the Blue Star Addendum. It was reported that [Nealy] mooned another tenant.

SPA did not amend or supplement this answer prior to trial. At trial, the trial court admitted SPA's evidence that (1) Nealy and one of her guests were the victims of two separate assaults; (2) Nealy loitered on the apartment's premises in violation of the lease; and (3) Nealy rode a four-wheeler or tractor on the apartment sidewalks, nearly hitting children on one occasion. At all relevant times, Nealy objected to the admission of this evidence on the ground that these acts were not disclosed in response to Nealy's interrogatory.

The admission or exclusion of evidence rests in the sound discretion of the trial court and will not be disturbed absent an abuse of that discretion. *Owens—Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 43 (Tex.1998). In determining whether there was an abuse of discretion, we must ascertain whether the court acted without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985).

 Without any citation to authority or explanation, SPA contends that its response that Nealy violated the apartment rules and the Blue Star Addendum sufficiently answered the interrogatory request. The sufficiency of the answers to any given set of interrogatories must be decided on a case-by-case basis. *Alexander v. Barlow,* 671 S.W.2d 531, 533 (Tex. App.-Houston [1st Dist.] 1983, writ ref'd n.r.e.). "There are few general rules regarding answers to interrogatories because of the unique nature of interrogatories and because the answers thereto are different in every case." *Jamail v. Anchor Mortgage Servs., Inc.,* 797 S.W.2d 369, 374 (Tex.App.-Austin 1990, writ denied). We conclude that SPA's answer was not sufficient when made.

 Nealy's interrogatory clearly asked SPA to identify the *acts* of Nealy's undesirable tenant behavior by indicating what that act was, who was involved, and when it occurred. We do not see, and SPA does not explain, how its response that Nealy violated the rules of the apartment and violated the Blue Star Addendum addressed any of these questions. Nealy's question sought specific information, and SPA's answer did not provide that specificity. Further, when responding to written discovery, a party must make a complete response, based on all information reasonably available to the responding party at that time that the re-

sponse is made. Tex.R. Civ. P. 193.1. At trial, Nealy's counsel questioned SPA's manager as to why the complained-of acts were not included in the response to the interrogatories. SPA's manager testified that it depended on whether the acts occurred before or after she answered the interrogatory. She also testified that she had "no idea" why those acts that occurred before discovery were not included in the response. However, a party has a duty to amend or to supplement a discovery response when that response is no longer complete and correct. *See id.* 193.5(a).

Because SPA did not amend or supplement its discovery responses prior to trial, SPA was subject to Rule 193.6(a) of the Texas Rules of Civil Procedure. Rule 193.6(a) provides that a party who fails to make, to amend, or to supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, unless the court finds that there was good cause for the failure to make, to amend, or to supplement the discovery response timely, or that the other parties will not be unfairly surprised or prejudiced by the failure to make, to amend or to supplement. *Id.* 193.6(a). The party seeking to introduce the evidence carries the burden of establishing good cause or lack of unfair surprise or unfair prejudice. *Id.* 193.6(b). A finding of good cause or lack of unfair surprise or unfair prejudice must be supported by the record. *Id.*

 Here, SPA never carried its burden of establishing good cause or lack of unfair surprise or unfair prejudice. Each time that Nealy objected to the undisclosed evidence, the trial court immediately overruled her objection. Thus, SPA never established the exceptions to 193.6, and the trial court never made findings as required by 193.6(a). *See id.* 193.6(a). Accordingly, we conclude that the trial court

abused its discretion in admitting evidence regarding the assaults on Nealy and her guest, Nealy's loitering on the premises, and Nealy's driving of the four-wheeler or tractor on the apartment's sidewalks.[5]

 We must now determine whether the erroneously admitted evidence harmed Nealy. When erroneously admitted evidence is merely cumulative or does not concern a material issue dispositive of the case, the error is harmless. *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). Harmfulness is determined by looking at the entire record to see whether the judgment was controlled by the testimony that should have been excluded. *McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72, 75 (Tex.1989). In the trial court's findings of fact, the court found that (1) Nealy loitered on the premises, (2) the police "responded to [two] Assault [sic] incident[s] that occurred at [Nealy]'s unit," (3) Nealy rode a four-wheeler in the pedestrian areas of the apartment, and (4) there were two reports that Nealy mooned other tenants or maintenance workers.[6] Because evidence of the first three bases was erroneously admitted into evidence, whether Nealy was harmed by these additional acts rests on whether reports of mooning fit within one of the four grounds for evicting Nealy under the lease.

As stated above, the lease provided that SPA could terminate the tenancy for (1) a serious or repeated violation of the terms and conditions of the lease; (2) a violation of federal, state, or local law that imposed obligations on Nealy in connection with the occupancy or use of the contract unit and the premises; (3) criminal activity; or (4) other good cause. We note that the first three grounds for eviction—violation of the lease, violation of the law, or criminal activity—each require *actual* conduct, not mere allegations. Because the trial court did not find that Nealy actually mooned anyone, we conclude that reports of mooning do not fit within the first three grounds for evicting Nealy. We also conclude that mere reports of Nealy's mooning others do not amount to good cause for evicting her. Had the trial court found that Nealy actually mooned others, the analysis would have been different; however, reports are nothing more than allegations, which this Court will not term as "good cause" for evicting a tenant in federally subsidized housing.

Because the reports of mooning do not fit within any of the four grounds for evicting Nealy under the lease, we conclude that Nealy was harmed by the admission of the undisclosed evidence.[7] Accordingly, we reverse the trial court's judgment and remand the cause for further proceedings.

---

5. SPA contends, without citation to authority, that Nealy was required to object to the interrogatories under Texas Rule of Civil Procedure 193.6 and that that failure waived Nealy's right to complain on appeal. We disagree with SPA's contention. Rule 193.6 does not require that a party object to insufficient written interrogatories, nor does this alleged failure waive the right to complain on appeal. *See* Tex.R. Civ. P. 193.6.

6. Regarding Nealy's alleged mooning, finding of fact number 10 states, "On at least two (2) occasions, it was *reported* that Defendant exposed her buttocks to ('mooned') other tenants and/or maintenance workers." (emphasis added).

7. Due to our disposition, we do not address Nealy's second point of error.