**Petition for Writ of Mandamus Conditionally Granted and Memorandum Opinion filed January 4, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-00861-CV

### IN RE CITY OF HOUSTON, Relator

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**County Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Cause No. 921541**

## MEMORANDUM OPINION

Relator, the City of Houston, filed a petition for writ of mandamus in this court seeking relief from an order denying discovery of information concerning the development and/or sale of the real property at issue in the underlying suit. The real party in interest, Memorial Estate Builders, LLC (MEB), sued the City seeking declaratory relief and alleging that it is entitled to damages for inverse condemnation through a regulatory taking. *See* Tex. Const. art. I, § 17. The City

asks this court to direct the Honorable Linda Storey, the presiding judge of Harris County County Civil Court at Law No. 3, to grant its motion to compel the requested discovery. The City also filed a motion for temporary relief, asking that we stay the trial that was scheduled to commence in October of 2012, asserting that it had been improperly denied discovery of information vital to its defense. *See* Tex. R. App. P. 52.8(b); 52.10. After providing MEB an opportunity to respond to the motion for stay, this court granted the City's motion and issued an order staying the trial pending resolution of this proceeding. Because MEB failed to object to the City's discovery requests, and the information the City seeks goes to the heart of MEB's claim for lost profits, we conditionally grant the writ.

## I. BACKGROUND

MEB filed an application to replat two vacant residential lots in Monarch Oaks Subdivision (the property) into six lots in May 2006. The application was denied, purportedly because development of the replatted lots would conflict with existing deed restrictions requiring that construction be set back twenty-five feet and that residences face the street. After the first application was denied in August 2006, the homeowners in Monarch Oaks Subdivision amended the deed restrictions to expressly prohibit subdividing lots. The City then denied MEB's second application to replat in October 2006.

In 2008, MEB sued the City, seeking damages of over $1 million for an inverse condemnation by regulatory takings claim based on the City's 2006 denial of MEB's applications to subdivide the property. MEB alleges in its suit that because of the City's action, it could not develop the land as it desired, suffering a loss of potential profits from the sale of subdivided lots and/or the development and sale of multiple building sites. MEB alleged an inverse condemnation claim under Article I, section 17 of the Texas Constitution, which prohibits a person's

property from being "taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person."[1] Tex. Const. art. I, § 17.

The City propounded discovery on MEB in December of 2009 and again in March of 2010. MEB answered and produced responsive documents. Among the requests for production were requests for documents related to the sale or development of the property. In early 2012, the City learned that MEB may have sold or developed the property. By letter dated May 17, 2012, the City sought supplementation of MEB's discovery responses with any information concerning sales of the subject property or homes built on the property.[2] MEB did not supplement its discovery.

---

[1] MEB makes no claim under the Takings Clause of the Fifth Amendment to the United States Constitution, which is made applicable to the states through the Fourteenth Amendment. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 933 (Tex. 1998). Texas case law on takings under the Texas Constitution is consistent with federal jurisprudence, however, and we may look to federal takings cases for guidance. *See City of Austin v. Travis Cnty. Landfill Co.*, 73 S.W.3d 234, 238–39 (Tex. 2002).

[2] Relevant to this proceeding, MEB responded to and did not object to Houston's First Request for Production Nos. 13, 14, 15, 16, 18, 19 and 20; it objected to Requests No. 12 and 17. We find no indication that a hearing was conducted on these objections, and therefore the City, as the requesting party, waived its right to compel discovery on these two requests. *See Roberts v. Whitfill*, 191 S.W.3d 348, 361 n. 3 (Tex. App.—Waco 2006, no pet.). MEB responded to the City's Second Request without making any objections. In its May 17, 2012, letter requesting supplementation, the City referred to the following requests:

**REQUEST FOR PRODUCTION NO. 13:**
Produce all agreements that have been entered into by Plaintiff for the sale or lease of the Property since the date Plaintiff's purchased the Property.
**REQUEST FOR PRODUCTION NO. 14:**
Produce all documents related to future contracts/agreements that Plaintiff claims have been lost as a result of the City's alleged taking.
**REQUEST FOR PRODUCTION NO. 15:**
Produce all documents related to maps, appraisals, surveys of the Property since Plaintiff's [*sic*] purchased the Property.
**REQUEST FOR PRODUCTION NO. 16:**
Produce all drawings maps or sketches of the Property from 2004 to present.

On August 22, 2012, more than thirty days before the scheduled trial date, the City filed a motion to compel discovery. *See* Tex. R. Civ. P. 215.1(b). In its motion to compel, the City sought production of documents relating to the sale or development of the subject property. In response, MEB claimed that the motion to compel was untimely and that information on current sales is not relevant to the taking that occurred in 2006, when its applications to replat were denied.[3]

The trial court conducted a hearing on the City's motion to compel on August 29, 2012. The hearing was brief and consisted only of argument of counsel. The trial court orally denied the City's motion to compel. *See* Tex. R. App. P. 52.3(k)(1)(A) (permitting the matter complained of in mandamus petition to be shown by filing a reporter's record from the hearing reflecting the oral ruling when a written order has not been signed); *see also In re Bledsoe*, 41 S.W.3d 807, 811 (Tex. App.—Fort Worth 2001, orig. proceeding). The City then brought this

**REQUEST FOR PRODUCTION NO. 18**:
Produce all architectural drawings related to the Property.
**REQUEST FOR PRODUCTION NO. 19:**
Produce all architectural drawings related to the Plat.
**REQUEST FOR PRODUCTION NO. 20:**
Produce all architectural, technical drawings, electrical and other plans, including engineering plans and designs or plats pertaining to the Property.
**SECOND REQUEST FOR PRODUCTION NO. 3:**
All contract(s) and communications between Plaintiff and any mortgage company, real estate company (agent or broker) listing the Property for sale from the time Plaintiff purchased the property to present.
**SECOND REQUEST FOR PRODUCTION NO. 4:**
All professional appraisals relating to the Property from the time Plaintiff purchased the Property (including appraisals done during the process of the sales transaction when [MEB] purchased the property) to present.
**SECOND REQUEST FOR PRODUCTION NO. 5:**
All contract(s) and communications between Plaintiff and David Weekly Homes, or any other homebuilder for the purpose of submitting plans to build homes on this Property.

[3] Neither the City nor MEB made any specific arguments related to specific requests for production. Accordingly, we do not address any specific requests, and our opinion is directed to the general categories of documents related to the development and sale of the property.

proceeding. In response to the City's petition, MEB acknowledges that it sold one lot in February of 2012, and that it was building a single family home on the other lot for a third party. At the time it filed its response, MEB had not closed on the sale of the single family home.

## II. MANDAMUS RELIEF WHEN DISCOVERY HAS BEEN DENIED

Mandamus relief is available to correct a clear abuse of discretion for which the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). Appeal is not an adequate remedy when a party's ability to present a viable defense at trial is vitiated or severely compromised by the trial court's discovery error. *Able Supply Co. v. Moye*, 898 S.W.2d 766, 772 (Tex. 1995). Mandamus is appropriate if a defendant has been denied a reasonable opportunity to develop the merits of its defense. *See Gen. Motors Corp. v. Tanner,* 892 S.W.2d 862, 863 (Tex. 1995) (per curiam). While courts generally do not review orders refusing to compel discovery, mandamus relief may be granted when the denial of discovery goes to the heart of a party's case. *In re Allied Chem. Corp.*, 227 S.W.3d 652, 658 (Tex. 2007).

Because MEB argues that the trial court did not abuse its discretion in denying the City's motion to compel on relevance grounds, we must examine MEB's claim for damages from a regulatory taking.

## III. REGULATORY TAKING

A landowner whose property has been taken, damaged, destroyed for, or applied to public use without adequate compensation may bring an inverse condemnation claim. *City of Abilene v. Burk Royalty Co.*, 470 S.W.2d 643, 646 (Tex. 1971); *Boyle,* 148 S.W.3d at 177. The claim is denominated "inverse" because the property owner asserts the claim. *City of Houston v. Texan Land &*

*Cattle Co.*, 138 S.W.3d 382, 387 (Tex. App.—Houston [14th Dist.] 2004, no pet.). An inverse condemnation may occur when the government physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development. *Taub*, 882 S.W.2d at 826 (Tex. 1994); *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). This latter type of inverse condemnation where no physical taking has occurred is referred to as a regulatory taking. *See Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 933 (Tex. 1998).

All property is held subject to the valid exercise of the government's police power; therefore, not every regulation is a compensable taking. *Sheffield Dev. Co. v. City of Glenn Heights.* 140 S.W.3d 660, 670 (Tex. 2004). A restriction in the permissible uses of property or a diminution in its value resulting from regulatory action within the government's police power may or may not be a compensable taking. *Id.* at 677–78.

To determine whether a regulatory taking has resulted from the government's unreasonable interference with a property owner's right to use and enjoy his property, courts must consider the following three factors, referred to as the *Penn Central* factors: (1) the economic impact of the regulation; (2) the extent to which the regulation interferes with the owner's distinct investment-backed expectations; and (3) the character of the governmental action. *Sheffield,* 140 S.W.3d at 672 (citing *Penn Cent. Transp. Co. v. City of New York,* 438 U.S. 104, 124, 98 S.Ct. 2646 (1978)). These factors are not exclusive; a regulatory taking analysis requires consideration of all the relevant surrounding circumstances. *Sheffield,* 140 S.W.3d at 672-73.

# IV. ANALYSIS OF THE CITY'S ISSUE

In the City's sole issue in this proceeding, it asserts that the trial court abused its discretion in denying its request to compel production of documents evidencing the development and sale of the subject property. The City asserts that the information sought directly relates to MEB's claim that government action damaged its property and interfered with its investment-backed expectations. MEB asserts that its "expectations were premised on the right to replat the Property into six lots." It claims that the City's "new regulation" has diminished its economic expectations through the inability to subdivide the property, and reasserts its arguments that the City's motion to compel was untimely and the discovery sought was irrelevant.

## A. Discovery Rules

The general scope of discovery is defined as any unprivileged information relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (quoting Tex. R. Civ. P. 192.3(a)). Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. Tex. R. Evid. 401. The phrases "relevant to the subject matter" and "reasonably calculated to lead to admissible evidence" are liberally construed to allow litigants to obtain the fullest knowledge of the facts and issues prior to trial. *Axelson v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990).

Rule 193 of the Texas Rules of Civil Procedure "imposes a duty upon parties to make a complete response to written discovery based upon all information reasonably available, subject to objections and privileges." Tex. R. Civ. P. 193

cmt. 1. Rule 193.2 specifically requires objections to written discovery to be in writing and to provide the specific legal or factual basis for the objection. Tex. R. Civ. P. 193.2(a). A party seeking to exclude any matter from discovery must assert any objection to a request for production in writing within its response. Tex. R. Civ. P. 196.2(b); *Bielamowicz v. Cedar Hill I.S.D.,* 136 S.W.3d 718, 723 (Tex. App.—Dallas 2004, pet. denied).

Although the scope of discovery is broad, requests must be reasonably tailored to include only relevant matters. *CSX Corp.*, 124 S.W.3d at 152 (citing *In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (per curiam)). Overbroad requests for irrelevant information are improper. *CSX Corp.*, 124 S.W.3d at 153. Rule 193 permits a party to object to discovery as overbroad and to refuse to comply with it entirely. *Id.* at cmt. 2 (citing *Loftin v. Martin*, 776 S.W.2d 145 (Tex. 1989)). Thus, the requirement for a written objection applies to a complaint that the subject discovery is overbroad (encompassing a relevance objection), and a party who fails to comply waives the objection. *See In re HEB Grocery Co., L.P.*, 375 S.W.3d 497, 501 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding) (citing Tex. R. Civ. P. 193.2(a)).

The responding party also has the burden to supplement discovery. *See* Tex. R. Civ. P. 193.5(a); *Nealy v. Southlawn Palms Apartments*, 196 S.W.3d 386, 394 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (stating that a party has a duty to amend or supplement discovery response when that response is no longer complete and correct).

## B. Timeliness of the City's Motion

MEB argued below that the City's motion to compel was untimely. Although MEB did not cite authority to support untimeliness of the motion to

compel, because the trial court appears to have considered MEB's argument below, we will review the issue.

Texas Rule of Civil Procedure 215.1 provides that a party may apply for an order compelling discovery "upon reasonable notice to other parties." The rule contains no filing deadline. MEB had a duty to supplement its discovery and it failed to do so. Our record does not contain a docket control order or other order imposing a deadline on discovery. The motion to compel was filed more than thirty days before trial was scheduled. The circumstances in this case may be distinguished from cases in which a motion to compel was filed on the eve of trial. *See, e.g., Piazza v. Cinemark, USA, Inc*., 179 S.W.3d 213, 216 (Tex. App.—Eastland 2005, pet. denied) (noting that the trial court did not abuse its discretion by denying motion to compel filed two days before summary judgment hearing because plaintiff had more than ample time for discovery).

In addition, the City learned of the sale and development of the property in the spring of 2012, shortly before its May 2012 written request for MEB to supplement its discovery. The City should not be penalized by MEB's failure to timely supplement its responses. Under these circumstances, the City's motion to compel discovery was timely.

## C. Failure to Object to Relevance

MEB asserted in response to the motion to compel in the court below that it is not required to supplement its answers to the requested discovery because the information sought is not relevant. MEB did not make that objection, or any other specific objection, to the City's request for information regarding the sale and development of the property when it answered the City's discovery. *See* Tex. R. Civ. P. 193.2(a). By failing to include a written objection on relevance grounds with its answers to the City's requests for production, MEB has waived its

9

objection on relevance grounds both in response to the City's motion to compel and in this proceeding. *See* Tex. R. Civ. P. 193.2(e); *In re HEB Grocery Co., L.P.*, 375 S.W.3d 497, 501 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding).

## D. Relevance

Having rejected both of MEB's arguments against the City's motion to compel, we hold that the trial court clearly abused its discretion in denying that motion. Mandamus is not available, however, unless the City also lacks an adequate remedy by appeal. As explained above, an appellate remedy is inadequate when the discovery sought goes to the heart of a party's case. Thus, even though MEB has waived its relevance objection, we must examine the relevance of the discovery to determine whether this test has been met. We conclude that it has.

MEB asserts that the discovery at issue is not relevant to the determination of damages. First, MEB cites Texas Property Code Section 21.042, addressing damages in condemnation proceedings.[4] MEB argues that the measure of damages is limited to the difference between the market value of the property immediately before and immediately after the taking, citing *Callejo v. Brazos Elec. Power Co op,* 755 S.W.2d 73, 76 (Tex. 1988). *See also Brunson v. State*, 444 S.W.2d 598, 602 (Tex. 1969) (holding that the measure of damages for the physical taking of trailer house was the market value of the trailer house at the time of the taking). MEB asserts that its damages are frozen in time as of the date of the condemnation in 2006. MEB alleges that compensation for land taken by eminent domain must be limited to circumstances that may have affected the market value of the land at the

---

[4] Section 21.042(a) provides that "[t]he special commissioners shall assess damages in a condemnation proceeding according to the evidence presented at the hearing." Tex. Prop. Code § 21.042(a). The statute further addresses how commissioners determine damages when an entire parcel of land is condemned and when only a portion of a parcel of land is condemned. *Id.* § 21.042(b)-(d).

time of the taking, citing *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 627 (Tex. 2002) (reviewing standard for valuing pipeline easement in condemnation proceeding). Thus, MEB asserts, evidence of events occurring years after the date of a taking—as the sales apparently did here—is generally irrelevant because those events could not have affected an earlier market value. *See Heddin v. Delhi Gas Pipeline Co.,* 522 S.W.2d 886, 889 (Tex. 1975) ("A rupture occurring subsequent to the date of taking could not have had an effect on market value as of the date of taking."); *Sw. Pub. Serv. Co. v. Vanderburg*, 526 S.W.2d 692, 694 (Tex. Civ. App.—Amarillo 1975, no writ) (explaining that testimony should not have been admitted because it concerned an incident that occurred "after the date of taking, and thus, could not have influenced market value on the date of taking").

As the City points out, however, the cases MEB cites involve statutory condemnation proceedings, in which the measure of damages is the lost market value of the land at the time of condemnation. In contrast, MEB's damage model in this inverse condemnation case is based on the lost profits that MEB expected to earn in the future if the City had approved the replat.[5]

Lost profits are damages for the loss of net income to a business, and a claimant must demonstrate one complete calculation of the net figure. *Kellman v. Workstation Integrations, Inc.*, 332 S.W.3d 679, 684 (Tex. App.—Houston [14th Dist.] 2010, no pet.). MEB acknowledges that it recently sold one of the subject lots and is currently building a home on the other lot for a third party. This actual sale income and building expense is relevant—and indeed critical—to MEB's

---

[5] The record before us contains a letter from MEB's manager that explains its lost profits damage calculation. It is unclear from MEB's response to the mandamus petition whether it intends to (a) use this lost profits evidence as a stand-alone damage model, or (b) consider the lost profits as a factor in determining lost market value. *See, e.g., Sheffield*, 140 S.W.3d at 677 (noting lost profits can be considered in assessing value of property and impact of inverse condemnation). In either event, MEB must provide a complete calculation of lost profits as discussed below.

damages: it must be taken into account in providing a complete calculation of the net profits that MEB alleges it *lost* as a result of the City's actions. *See, e.g., Texaco, Inc. v. Phan*, 137 S.W.3d 763, 771-72 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (discussing calculation of lost profits by subtracting actual net profits from expected net profits).

Thus, we agree with the City that MEB cannot recover lost profits without accounting for any profit gained from an actual sale. Although courts have refrained from prescribing any particular method of calculating last profits, and we do not do so here, MEB has not explained how it can provide a complete calculation of lost profits without somehow taking into account the information requested by the City. Accordingly, we hold that the requested information goes to the heart of the claim for damages, and thus the City is entitled to mandamus relief to compel its disclosure.[6]

## V. CONCLUSION

MEB did not object in the trial court to the City's requests for production of documents related to any sale or development of the property. MEB has a duty to supplement its answers to the City's requests for production, and it failed to do so. The requested documents are relevant, and the trial court clearly abused its discretion in denying the City's motion to compel MEB to supplement its responses to the City's discovery requests for documents relating to the sale and development of the property. The information sought goes to the heart of the claim for damages based on lost profits. Therefore, the City has no adequate remedy by appeal. *See Able Supply Co*, 898 S.W.2d at 772-73 (granting mandamus relief when the discovery denied by the trial court goes to the very heart of the case).

---

[6] Given our disposition, we need not address the parties' arguments about whether a remote sale is also relevant in deciding whether a regulatory taking occurred.

We conditionally grant the City's petition for writ of mandamus and direct the trial court to grant its motion to compel MEB to supplement its responses to the City's First Requests for Production Nos. 13, 14, 15, 16, 18, 19, and 20, and Second Requests for Production Nos. 3, 4, and 5. We are confident that the respondent will comply, and the writ will issue only if she does not.

PER CURIAM

Panel consists of Chief Justice Hedges and Justices Brown and Busby.