# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00102-CV

**Harold Almon, Appellant**

**v.**

**Skyline Terrace Apartments, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. C-1-CV-17-010761, HONORABLE TODD T. WONG, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Harold Almon appeals from the trial court's final judgment in a forcible-detainer suit awarding possession of certain residential real property to Skyline Terrace Apartments. *See* Tex. Prop. Code §§ 24.001-.011. Because Almon no longer possesses the property and has failed to assert a potentially meritorious claim for current, actual possession, we dismiss this appeal as moot.

## BACKGROUND

Skyline Terrace is a multi-family housing complex that receives governmental subsidies to provide housing to low-income individuals at reduced rates. Almon, who receives Social Security disability income, rented a unit at Skyline Terrace pursuant to a lease with an initial term beginning on June 1, 2016 and ending on May 31, 2017 (the "Lease"). The Lease provided that Almon's tenancy would automatically renew on a month-to-month basis at the expiration of its

initial term until terminated in accordance with the Lease. The Lease also stated that Skyline Terrace could not terminate Almon's tenancy or refuse to renew the lease except for: (1) "serious or repeated violations of the terms and conditions of the lease"; (2) "violation of applicable Federal, State, or local law"; (3) "completion of tenancy period for transitional housing"; or (4) "other good cause." Similarly, the Lease prohibited Almon from engaging in specific activities, including "criminal conduct" and "disturbing or threatening the rights, comfort, health, safety, or convenience of others (including [Skyline Terrace] agents and employees) in or near the apartment community."

On July 25, 2017, Skyline Terrace delivered written notice to Almon that it was terminating his Lease at the end of the monthly renewal period and on September 6, delivered notice to Almon that he was occupying as a holdover and demanded that he vacate the property within four days. After Almon failed to vacate, Skyline Terrace filed a forcible-detainer suit in the justice court against Almon and all occupants. *See* Tex. Gov't Code § 24.004 (justice court has original jurisdiction over cases of forcible entry and detainer). The justice court rendered judgment in favor of Skyline Terrace, awarding it possession of the property, and Almon appealed the judgment to the county court at law. *See* Tex. R. Civ. P. 510.10. On February 7, 2018, following a de novo bench trial, the county court signed a final judgment awarding Skyline Terrace possession of the property and holdover rent in the amount of $3,150 and setting bond at $7,350.

Almon filed a notice of appeal but did not file a supersedeas bond. *See* Tex. Prop. Code § 24.007 ("A judgment of a county court in an eviction suit may not under any circumstances be stayed pending appeal unless, within 10 days of the signing of the judgment, the appellant files a supersedeas bond in an amount set by the county court."); Tex. R. Civ. P. 510.13 (same). On

2

February 14, the trial court issued writ of possession, and seven days later, the writ was executed

by a deputy with Travis County Constable's Office. *See* Tex. Prop. Code § 24.0061(b) (writ of

possession may not be issued before sixth day after date judgment of possession is rendered). Upon

execution of the writ, Skyline Terrace obtained possession of the property.

## DISCUSSION

In two issues, Almon challenges that portion of the county court's judgment awarding

possession of the property to Skyline Terrace.[1]  In response, Skyline Terrace argues, in part, that

because Almon failed to post the supersedeas bond set by the trial court, execution of the writ of

possession has rendered this appeal moot. Because it implicates our jurisdiction, we first consider

the effect of the execution of the writ of possession on this appeal.

### *Mootness*

A tenant who is holding over "willfully and without force" after the termination

of his right of possession to real property commits a forcible detainer if he refuses to surrender

possession of the property on demand. *Id.* § 24.002(a)(1).  The forcible-detainer action was created

by the legislature as a speedy, simple, and inexpensive procedure for obtaining immediate possession

of property when there is no unlawful entry, *Williams v. Bank of N.Y. Mellon*, 315 S.W.3d 925, 926

---

[1]  In his first issue on appeal, Almon argues that the evidence is factually insufficient to support the trial court's conclusion that Skyline Terrace is entitled to possession of the property because, in Almon's view, Skyline Terrace failed to comply with certain "heightened" procedural requirements for terminating a "section 8" lease. In his second issue on appeal, Almon asserts that the trial court erred in issuing a writ of possession because Almon had already perfected this appeal. As previously noted, a forcible-detainer judgment may not be stayed pending appeal unless appellant files a supersedeas bond, *see* Tex. Prop. Code § 24.007, and Almon did not file a supersedeas bond.

3

(Tex. App.—Dallas 2010, no pet.), and the only issue in the action is the right to actual possession of the property, *Marshall v. Housing Authority of San Antonio*, 198 S.W.3d 782, 787-88 (Tex. 2006). The forcible-detainer judgment is "not a final determination of whether the eviction is wrongful" or whether the tenant's continued possession is a trespass. *Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 919 (Tex. 2013).

Appellate courts lack jurisdiction to decide moot controversies and render advisory opinions. *Briones v. Brazos Bend Villa Apts.*, 438 S.W.3d 808, 812 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *National Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999)). A case becomes moot if, during any stage of the proceedings, a controversy ceases to exist between the parties. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). Although the failure to supersede a forcible-detainer judgment does not divest an appellant of the right to appeal the judgment, it does subject the judgment to enforcement, including the issuance and execution of a writ of possession. *Marshall*, 198 S.W.3d at 786-87. The issue of possession becomes moot in an appeal from a forcible-detainer judgment when the appellant ceases to have actual possession of the property, unless the appellant holds and asserts "a potentially meritorious claim of right to current, actual possession." *Id.* at 787.

The issue of whether an appellant who has vacated the property can demonstrate a "right to current, actual possession" often turns on whether the lease term has expired before or during the appeal. *See id.* (explaining that lease term had expired and appellant presented "no basis for claiming a right to possession after that date"); *see also Allen-Mercer v. Roscoe Props.*, No. 03-15-00674-CV, 2016 Tex. App. LEXIS 9247, at *5 (Tex. App.—Austin Aug. 25, 2016,

4

no pet.) (mem. op.) (concluding that lease had expired by its own terms and tenant made "no argument, that even if meritorious could form the basis of a claim to possession after this date"). Almon's Lease with Skylight Terrace, however, did not expire but instead automatically renewed on a month-to-month basis at the end of the initial one-year term. Under the Lease, Almon's tenancy would end only when either Almon gave proper notice of his intent to move out or Skylight Terrace gave notice to Almon of its intent to terminate his tenancy for "good cause." Consequently, pursuant to the automatic-renewal provision, Almon's claim of right to current, actual possession turns on whether the Lease was properly terminated by Skylight Terrace. *See Geters v. Baytown Hous. Auth.*, 430 S.W.3d 578, 582 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (concluding that tenant asserted arguable basis for right to possession even though initial one-year term in lease had expired because HUD regulations required automatic renewal and there was no good cause for termination); *see also Heinert v. Wichita Falls Hous. Auth.*, 441 S.W.3d 810, 817 n.3 (Tex. App.—Amarillo 2014, no pet.) (following *Geters*). On appeal, Almon challenges the trial court's implied findings supporting the conclusion that Skylight Terrace's termination of the Lease was proper.[2] We will review Almon's issues on appeal to the extent they inform our jurisdictional analysis.

---

[2] When, as in this case, no findings of fact or conclusions of law are filed or requested following a bench trial, it is implied that the trial court made all the necessary findings to support the judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992). When the appellate record includes the reporter's record and clerk's record, as in this case, these implied findings are not conclusive and may be challenged on appeal for legal and factual sufficiency. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002).

5

***Good cause for termination***

In his first issue on appeal, Almon argues that the evidence is factually insufficient to support the trial court's implied finding that "good cause" existed for Skylight Terrace to terminate the Lease.[3]

At trial, Skylight Terrace introduced evidence that on April 5, 2017, an incident involving Almon was reported to Skylight Terrace management and to the Austin Police Department. According to the incident report prepared by Skylight Terrace staff, contracted janitorial staff at Skylight Terrace were "traumatized" after seeing Almon "expose[] himself" by "walking outside of his apartment at 11:08 PM [on April 5] completely nude." On April 6, 2017, Almon received a notice of violation, stating that Skyline Terrace management had received a report that Almon had exposed himself to the "cleaning crew last night" and that management had "footage of [him] wearing a towel in the hall and taunting them." Skylight Terrace also informed Almon, "This is not only against the law, it is against our policies." On July 11, 2017, Skylight Terrace management gave another written notice to Almon stating that he had "ten days in which to cure" certain enumerated types of conduct, including "[i]ntimidation and harassment of our cleaning vendors; specifically, standing out in the hall in a towel, staring at them aggressively and making them uncomfortable." In his testimony at trial, Amon denied that he had ever exposed himself and pointed

---

[3] In reviewing implied findings for factual sufficiency, we consider all the evidence in a neutral light and will set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). We may not substitute our judgment for that of the trier of fact or pass upon the credibility of the witnesses. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406-07 (Tex. 1998).

out that the videotape of him, referred to in the April 6 notice and made an exhibit at trial, shows him wearing a towel in the hallway.

In this appeal, Almon does not dispute that Skylight Terrace's claim that he "intimidat[ed] and harrass[ed] our cleaning vendors" would, under certain circumstances, constitute "good cause" for terminating his Lease. Instead, Almon argues that this claim does not constitute "good cause" in this case because it refers to the April 5 incident with the janitorial staff, he was entitled to an opportunity to cure this conduct, and the evidence shows that he effectively cured this conduct by not engaging in it again after receiving notice on April 6. In making this argument, Almon relies on the following Lease provision:

> Opportunity to cure. Prior to serving the thirty-days notice to terminate or refusal to renew the tenancy on the Tenant, Owner must provide Tenant with at least a ten-day opportunity to cure any alleged lease violation with the exception of lease violations based on drug activity; serious, violent criminal activity; or other serious criminal activity.

Almon also argues that an opportunity to cure his "intimidation and harassment of [Skylight Terrace's] cleaning vendors" was required by HUD regulations.[4] Specifically, Almon relies on section 247.3(a)

---

[4] Federal housing benefits are protected by the Due Process Clause. *See* U.S. Const. amend. XIV; *Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1003 (4th Cir. 1970)*; Moon v. Spring Creek Apts.*, 11 S.W.3d 427, 433 (Tex. App.—Texarkana 2000, no pet.) (summarizing federal authority). In addition, landlords participating in the HUD subsidized housing program are obligated to comply with federal rules and regulations regarding leases and evictions. *See Nealy v. Southlawn Palms Apts.*, 196 S.W.3d 386, 390 (Tex. App.—Houston [1st Dist.] 2006, no pet.). Despite evidence in the record indicating that Skylight Terrace receives governmental subsidies to provide housing to low-income tenants, Skylight Terrace argues that the HUD regulations cited by Almon do not apply because there is no evidence that "[Almon] is a section 8 tenant and receives section 8 benefits via a housing choice voucher." We will assume without deciding that the HUD regulations cited by Almon are applicable to this dispute.

of the relevant HUD regulations, which states that a landlord may not terminate any tenancy in a subsidized project except upon certain enumerated grounds: (1) "[m]aterial noncompliance with the rental agreement"; (2) "[m]aterial failure to carry out obligations under [state landlord-tenant law]"; (3) "[c]riminal activity"; and (4) "[o]ther good cause." 24 C.F.R. § 247.3(a)(1)-(4) (2018). Subsection (b) states that "[t]he conduct of the tenant cannot be deemed *other good cause under section 247.3(a)(4)* unless the landlord has given the tenant prior notice that [going forward this conduct shall] constitute a basis for termination of occupancy." *Id.* § 247.3(b) (emphasis added).

Based on the record before us, we disagree that Skylight Terrace was required to give Almon an opportunity to cure his conduct toward the janitorial staff before it could properly terminate his lease. Under the Texas Penal Code, a person commits the criminal offense of indecent exposure if he exposes his anus or any part of his genitals with intent to arouse or gratify the sexual desire of any person, and he is reckless about whether another is present who will be offended or alarmed by this act. Tex. Penal Code § 21.08. The requisite intent for this offense may be inferred from circumstantial evidence, including the accused's conduct, his remarks, and all surrounding circumstances. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981). Having reviewed the evidence under the applicable standard of review, including the incident report admitted without objection, we conclude that the evidence is sufficient to support the trial court's implied findings that Almon committed a criminal offense, i.e. indecent exposure, and that consequently, Almon's violation of the Lease was based on "serious criminal activity," such that Skylight Terrace was not required to give Almon an opportunity to cure the conduct. Similarly, the trial court, as the trier of fact, could have reasonably determined that Almon's conduct toward the janitorial staff

8

constituted both "material noncompliance" and "criminal activity" under section 247.3(a)(1) and (3) of the relevant HUD regulations. *See* 24 C.F.R. § 247.3(a). As a result, the prior-notice requirement under section 247.3(b) does not apply to Almon's conduct toward the cleaning vendors. *See id.* § 247.3(b). Almon's conduct toward the janitorial staff could properly serve as "good cause" for termination of his Lease, despite the fact that Almon may not have committed this specific conduct again after receiving notice that Skylight Terrace considered it to be a Lease violation.

### *Notice of Termination*

Next, Almon asserts that the evidence is factually insufficient to support the trial court's implied finding that Skylight Terrace's July 25 advanced notice of termination of the Lease complied with the applicable regulatory notice requirements. Section 247.4 of the HUD regulations dictates the time and manner in which a landlord effectuates notice of its decision to terminate a HUD-subsidized tenancy. *See id.* § 247.4 (2018) ("Termination notice"). In relevant part, section 247.4(b) states that termination notice shall be accomplished by:

> (1) Sending a letter by first class mail, properly stamped and addressed, to the tenant at his or her address at the project, with a proper return address, and (2) serving a copy of the notice on any adult person answering the door at the leased dwelling unit, or if no adult responds, by placing the notice under or through the door, if possible, or else by affixing the notice to the door. Service shall not be deemed effective until both notices provided for herein have been accomplished. . . .

*Id.* § 247.4(b). Skylight Terrace's July 25 written notice of termination, introduced into evidence without objection at trial, states that it was hand delivered to Almon and that it was "posted on the inside of the dwelling's main entry door." Although Almon does not dispute that he personally

9

received this notice of termination, he argues that Skylight Terrace's notice of termination was ineffective because there is no evidence that it was also delivered by mail, as required by section 247.4(b).

Under almost identical circumstances, our sister court in Houston previously considered the effect of a landlord's failure to satisfy the mailing requirement of section 247.4(b) on the termination of a lease. *Washington v. Related Arbor Court, LLC*, 357 S.W.3d 676, 678-81 (Tex. App.—Houston [14th Dist.] 2011, no pet.). Rejecting appellant's argument that the termination was ineffective, the court explained that the evidence established that the tenant had received hand-delivered notice of termination and therefore was not harmed by the landlord's failure, if any, to mail her notice. *Id.* at 680. For example, the court pointed out, there was no "argument that mailed notice would have contained information the personally delivered notice did not" or that "failure to receive notice by mail impeded her defense before the justice court or the county court at law." *Id.* at 680. We agree that section 247.4(b)'s requirements for service of termination notice are subject to a harm analysis, and there is no argument nor any evidence that would support a finding that Almon was harmed by any failure of Skylight Terrace to mail him a copy of the July 25 notice of termination. *Id.* at 681 (concluding that requirements for manner of service under section 247.4(b) were subject to harm analysis); *see also Nealy v. Southlawn Palms Apts.*, 196 S.W.3d 386, 390 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (concluding that requirement under section 247.4(a) that termination notice state specific reasons for decision to terminate was subject to harm analysis); *cf. Moon v. Spring Creek Apts.*, 11 S.W.3d 427, 434-35 (Tex. App.—Texarkana 2000, no pet.) (noting federal authority holding that tenant must show harm from inadequate notice under

10

section 247.4(a) to obtain reversal and concluding that, even if showing of harm were required, tenant was harmed by deficient notice).

Based on the record before us, we conclude that the evidence is factually sufficient to support the trial court's implied findings that (1) there was "good cause" to terminate the Lease; and (2) Almon received effective notice of termination. Consequently, the Lease was properly terminated by Skylight Terrace.

## CONCLUSION

A writ of possession was executed on the trial court's forcible-detainer judgment after Almon failed to supersede enforcement of the judgment by filing a bond. As a result, Almon no longer occupies the property, and he has failed to demonstrate "a potentially meritorious claim of right to current, actual possession." *Marshall*, 198 S.W.3d at 787. Accordingly, there is no live controversy concerning possession for this Court to decide, and we dismiss this appeal as moot.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Field and Toth

Dismissed as Moot

Filed: December 18, 2018

11